[No. A046327. First Dist., Div. Two. May 23, 1990.]

GEORGE R. JEWELL et al., Cross-complainants and Appellants, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Cross-defendant and Respondent.

**COUNSEL**

Cappello & Foley, A. Barry Cappello and Michael L. Thornburg for Cross-complainants and Appellants.

O'Melveny & Myers, Warren Christopher, Bertrand M. Cooper, Carmen Luege, Gregory G. Corbeill and Kristian D. Whitten for Cross-defendant and Respondent.

OPINION

PETERSON, J.—George R. Jewell and Charles Duck, trustee of the bankruptcy estates of George M. Jewell and Laura E. Jewell,[1] (collectively, the Jewells), appeal from an order which, inter alia, denied their motion to tax costs for appeal bonds posted by respondent Bank of America National Trust and Savings Association (the Bank). We determine that the trial court did not abuse its discretion in allowing the appeal bond premiums as costs to the Bank, and affirm the order denying the Jewells' motion to tax those premiums.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The record before us contains only documents relating to the motion to tax costs. A complete description of the underlying litigation is set forth in *Kruse* v. *Bank of America* (1988) 202 Cal.App.3d 38 [248 Cal.Rptr. 217] (cert. den. (1989) 488 U.S. 1043 [102 L.Ed.2d 993, 109 S.Ct. 870]), the appeal which led to the posting of the bonds involved in this proceeding. We rely upon the *Kruse* decision and uncontradicted statements in the briefs of the parties for a summary of the procedural history of this case.

Irene O'Connell Kruse and the Jewells each owned family businesses in the Sonoma County apple industry. In 1980, Kruse filed a fraud action against the Bank and George M. and Laura E. Jewell, arising in part out of the Bank's role in the pledge of stock in her family business to George M. Jewell. George M. Jewell and Laura E. Jewell filed a cross-complaint against the Bank, joined as to some causes of action by their son, George R. Jewell, seeking entirely separate relief for tortious acts allegedly committed by the Bank. In 1985, Kruse and the Jewells obtained a judgment against the Bank on a jury verdict for many millions of dollars. Although the record before us does not disclose the precise amount of the original judgment, the record does indicate that, at the time the abstracts of judgment relevant to this proceeding were recorded, the amount of the judgment had been reduced to $22 million.

The complaint and the cross-complaint were tried together in the *Kruse* action. Both Kruse and the Jewells obtained multimillion dollar judgments against the Bank, which successfully appealed. On May 18, 1988, Division One of this court reversed the judgments in their entirety. (*Kruse* v. *Bank of America, supra,* 202 Cal.App.3d at p. 68.)

---

[1] The record before us does not reflect the substitution of a successor trustee in this litigation. Therefore, we refer to Duck as the trustee for purposes of this opinion.

On September 14, 1988, the Bank filed a memorandum of costs on appeal against Duck, as trustee,[2] and a separate memorandum of costs on appeal against George R. Jewell. Appeal bond costs were sought against Duck in the amount of $157,824 and against George R. Jewell in the amount of $56,574, for a total of $214,398. Duck and George R. Jewell then filed a motion to tax costs, arguing, inter alia, that the appeal bond costs should be taxed in their entirety because it was not necessary for the Bank to post such a bond.[3] Following a hearing, the court granted in part and denied in part the motion to tax costs, ruling that the appeal bond costs were necessary and, therefore, chargeable in their entirety to Duck and George R. Jewell. Only the portion of the ruling pertaining to the appeal bond costs is challenged on appeal.

## II. DISCUSSION

Code of Civil Procedure[4] section 995.250, subdivision (b), provides that recoverable costs shall include "The premium on a bond reasonably paid by the party in connection with the action or proceeding, *unless the court determines that the bond was unnecessary.*" (Italics added.) Similarly, rule 26(c) of the California Rules of Court provides in pertinent part: "The party to whom costs are awarded may recover only the following, when actually incurred: . . . (5) the premium on any surety bond procured by the party recovering costs, unless the court to which the remittitur is transmitted determines *that the bond was unnecessary.*" (Italics added.)

The Jewells contend that it was unnecessary for the Bank to post appeal bonds because it was entitled to a stay of execution without the requirement of a bond by virtue of 12 United States Code section 91 (hereafter section 91), which provides in pertinent part: "[N]o attachment, injunction, or execution, shall be issued against [a national banking] association or its property before final judgment in any suit, action, or proceeding, in any State, county, or municipal court."

In opposition to the motion to tax costs, the Bank filed the declaration of George M. Duff III, who had been senior counsel to the Bank in 1985. This declaration may be summarized as follows: In September of 1985, in connection with the pending sale of the Bank's headquarters building in San

---

[2] Although the record does not indicate when this occurred, Duck, as trustee of their bankruptcy estates, was apparently substituted as a party in place of George M. and Laura E. Jewell.

[3] Other issues were raised with respect to additional items of costs but are not involved in this appeal.

[4] Unless otherwise indicated, all subsequent statutory references are to the Code of Civil Procedure.

Francisco, Duff discovered that Duck and George R. Jewell had recorded abstracts of judgment in San Francisco and Marin counties, creating liens for the full amount of the judgments obtained in their favor in the trial court.[5] These liens temporarily affected the closing of the pending sale of the Bank's headquarters in San Francisco, and disrupted the Bank's real estate sales and mortgage lending operations. Shortly thereafter, Duff discovered that such abstracts had also been filed in virtually every county in California. Title insurance companies throughout California refused to issue policies of clear title or grant title insurance without excepting these liens. The declaration concluded: "After reviewing the applicable existing *California statutory law*, it became apparent to me that filing appeal bonds with the Court to secure the amount of the Jewells' judgments was the only efficient, certain and self-executing method by which the Bank could extinguish the liens recorded against its property by the Jewells and prevent further disruption of the Bank's real estate sales and mortgage operations. Therefore, I decided to file appeal bonds to secure the amount of the Jewells' judgments . . . ." (Italics added.) The record does not show that the Bank, at the time it posted the appeal bonds, reviewed or considered the applicable federal statute (§ 91) or the federal decisions then pertinent to its interpretation.

In 1987, approximately two years after the Bank posted the appeal bonds in this case, the United States Court of Appeals for the Fifth Circuit held that section 91 precludes any execution against a national banking association until entry of "a judgment on the merits which is no longer subject to examination on appeal, either because of disposition on appeal and conclusion of the appellate process, or because of the passage, without action, of the time for seeking appellate review." (*U.S.* v. *Lemaire* (5th Cir. 1987) 826 F.2d 387, 390, cert. den. (1988) 485 U.S. 960 [99 L.Ed.2d 423, 108 S.Ct. 1223] (*Lemaire*).) Thereafter the Fifth Circuit held that the prohibition set forth in section 91 against execution prior to final judgment extends to the recording of an abstract of judgment, as the Jewells did in this case. (*U.S.* v. *Federal Deposit Ins. Corp.* (5th Cir. 1989) 881 F.2d 207, cert. den. (1990) __ U.S. __ [107 L.Ed.2d 1025, 110 S.Ct. 1118].)[6]

The Bank contends on appeal that prior to the decision in *Lemaire* the term "final judgment" in section 91 had not been construed by the courts, and might have been interpreted to mean the judgment of a trial court even

---

[5] Section 697.310, subdivision (a) provides, with an exception not relevant here, that "a judgment lien on real property is created . . . by recording an abstract of a money judgment with the county recorder."

[6] We are aware that a United States District Court in Colorado has reached the opposite conclusion, holding that section 91 does not preclude the recording of a judgment lien against a national bank's property prior to final judgment. (*U.S.* v. *Theos* (D.Colo. 1989) 709 F.Supp. 1007.) We find the view of the Fifth Circuit expressed in the *Federal Deposit Ins. Corp.* case more persuasive.

though such judgment was still subject to appeal. The Bank urges that, because of this uncertainty and the quick certainty and finality of removing the liens of the judgment abstracts by posting the appeal bonds, it was not required to present the issue of the applicability of section 91 to the courts, and could post an appeal bond as a matter of necessity and business expediency and recover the costs thereof from the Jewells.[7]

The decision in *Lemaire*, a four-page opinion, is not a complicated or surprising one; and its result was arguably predictable.[8] The record before us shows the Bank elected to post the appeal bonds as a matter of expediency and business judgment. It has made no specific showing on this appeal that, before it posted such bonds, it considered or sought application of section 91 or the federal authorities predating the bond posting and cited by *Lemaire* (see fn. 8, *ante*).

The Jewells' position is that, had the Bank analyzed the federal decisions on which *Lemaire* relied (fn. 8, *ante*) and/or considered the legislative purpose of section 91, it would have concluded the statute proscribed recordation of abstracts of judgment against a national bank until conclusion of the appellate process; and that consequently no purchase of a bond to stay judgment during appeal was necessary because the lower court, on petition therefor, would order such prematurely recorded abstracts to be withdrawn on such analysis.[9] This reasoning erroneously implies that, if a judgment debtor fails to pursue an available or arguably available *alternative* method of staying enforcement of a judgment before filing a bond on appeal, he cannot recover as costs the premium expended for the bond. We cannot

---

[7] After the decision in *Lemaire* was rendered, the Bank successfully argued for a stay of execution under section 91 in a case pending before the Court of Appeal for the Third Appellate District. (*Stanghellini Ranches, Inc.* v. *Bank of America National Savings and Trust Association,* No. C003244.)

[8] The Fifth Circuit Court of Appeals there reasoned, inter alia, that the Supreme Court in 1883, in considering 28 United States Code section 2006 regarding execution of judgments against a revenue officer, interpreted the term "final judgment" in an analogous context as meaning a judgment after affirmance on appeal, citing *Schell* v. *Cochran* (1883) 107 U.S. 625 [27 L.Ed. 543, 2 S.Ct. 827]; that the same definition and meaning had been followed by the Seventh Circuit in construing the Equal Access to Justice Act (28 U.S.C. § 2412(d)) and the Suits in Admiralty Act (46 U.S.C. appen. §§ 741, 748) (*McDonald* v. *Schweiker* (7th Cir. 1983) 726 F.2d 311), and by the Northern District of Illinois in construing the Clayton Act (15 U.S.C. § 16(a)) (*State of Illinois* v. *Sperry Rand Corporation* (N.D.Ill. 1965) 237 F.Supp. 520, 523). Additionally, the Supreme Court in a case not involving construction of a statute interpreted the term "final judgment" as meaning judgment after appeal in a discussion of collateral attack on a "final judgment" for purposes of retroactive statutory application. (*Bradley* v. *Richmond School Board* (1974) 416 U.S. 696, 711, fn. 14 [40 L.Ed.2d 476, 488, 94 S.Ct. 2006, 2016]; see *U.S.* v. *Lemaire, supra,* 826 F.2d at pp. 388-389.)

[9] The Jewells are in the strange position of denigrating their posttrial action in recording the abstracts of judgment, i.e., they seem to now contend that the liens they recorded were ineffective because they violated section 91.

adopt that reasoning, since our consideration of the lower court's exercise of its discretion in allowing the bond premiums as costs to the Bank is not determined *solely* by the presence or absence of an alternative method of staying enforcement of the judgment. Section 995.250, subdivision (b) posits the exercise of such judicial discretion on the lower court's finding of whether the appeal bonds were "unnecessary."

In *Acoustics, Inc.* v. *Trepte Constr. Co.* (1971) 14 Cal.App.3d 887 [92 Cal.Rptr. 723], a case revealed by our research and cited by neither party, an analogous question was considered. Steiny & Mitchell, Inc. (Steiny), a party to the action, was awarded the sums it had expended as premiums on a bond posted to release funds held by a third party, which were the subject of a stop notice[10] filed by Acoustics. The court first found that the filing of the release bond was "connect[ed] with" the action within the meaning of, and subject to the terms of, former section 1035.[11] The court analyzed the *alternative* methods available to release funds held pursuant to a stop notice (i.e., by delivery of a surety bond under former section 1192.1; and by filing affidavits and counteraffidavits, followed by a court hearing under former section 1190.1, subdivision (c)), stating that "the premiums paid on such bond . . . may be allowed as costs [under former section 1035], provided such bond is found to be necessary." (*Acoustics, Inc.* v. *Trepte Constr. Co., supra*, 14 Cal.App.3d at p. 916.)

In examining the *necessity* of the bond premium payment in view of the available *alternative procedure* for accomplishing the same result of releasing funds from the effect of the stop notice, the court concluded: "We do not believe that the *alternative* procedure for the release of funds held pursuant to a stop notice claim provided by [former] section 1190.1 . . . , that is, by means of affidavits, counteraffidavits and a court proceeding, *made it obligatory* . . . to adopt such procedure in releasing the funds. Payroll, or accounts payable obligations, or both, could well *make it inexpedient for a contractor to adopt such alternative procedure. Furthermore, such procedure, of necessity, contemplates delay in the release of the funds and the employment of counsel in connection therewith.* [¶] *The allowance by the trial court of the bond premiums constitutes an implied finding that the bond was necessary.* We are not constrained here to reverse this finding." (14 Cal.App.3d at p. 916, italics added.)

The facts of the case at bench compel affirmance more strongly than those of *Acoustics, Inc.* Here, the alternative method of removing the lien of the judgment abstracts under section 91 was an undecided and legally

---

[10]The stop notice was filed pursuant to former section 1192.1.

[11]Now recodified in section 995.250.

uncertain question of first impression, until addressed by a federal court of appeals over two years after the appeal bond premiums were posted [12] In *Acoustics, Inc.*, the alternative method of removing the lien of the stop notice by affidavits, counteraffidavits, and a court proceeding was definitively established by statute and legally certain when the question arose.

■   The trial court's exercise of discretion in granting or denying a motion to tax costs will not be disturbed if substantial evidence supports its decision. (*Care Constr., Inc.* v. *Century Convalescent Centers, Inc.* (1976) 54 Cal.App.3d 701, 703 [126 Cal.Rptr. 761].)

■   We hold that, in considering the motion to tax costs claimed for posting an appeal bond, the trial court was not required to grant that motion *solely* because an alternative procedure to stay enforcement of the judgment was, or would be, available under section 91. In exercising its discretion in determining whether the appeal bond premiums were "unnecessary" under section 995.250, subdivision (b), the court could *also* consider: the expediency or inexpediency to the Bank, as judgment debtor, of the alternative procedure to stay enforcement of judgment; the delay, if any, in obtaining relief from the lien of the judgment, which use of the alternative procedure was reasonably likely to engender; the risk and danger of reasonably foreseeable monetary loss, if any, to the Bank by reason of the use, or attempted use, of the alternative procedure, pending which the recorded abstracts of judgment would continue to interfere with the Bank's ongoing lending operations and remain a cloud on the title to its real property; and other additional expense and interference with its business operations, if any, the Bank would incur by utilization of the alternative procedure.

Measured by these standards, we cannot find an abuse of discretion by the lower court in allowing the appeal bond premiums as costs. That decision impliedly found the bonds were necessary, a finding supported by substantial evidence.

The Jewells' final contention is that, in order to claim the appeal bond premiums as costs, the Bank was required to ask them voluntarily to release the abstracts of judgment before posting the bonds. We know of, and have been cited to, no authorities which hold or hint that a condition precedent to recovery of costs of the premium for an appeal bond is a request by the judgment debtor that a recorded abstract of judgment against him be voluntarily withdrawn by his judgment creditor.

---

[12] Even had the Bank successfully pursued this alternative in the trial court, the Jewells could have commenced a time-consuming appeal on an issue then of first impression.

The Jewells chose to exercise their right to create these liens by recording the judgment abstracts. Once a judgment creditor takes that positive step toward enforcing his judgment, the judgment debtor may clearly pursue his legal remedies to stay the judgment's enforcement pending appeal. He is entitled to presume that a creditor who so imposed the lien of record intended to accomplish that result, and he need not seek voluntary relinquishment of the lien before bonding against its enforcement pending appeal.

### III. DISPOSITION

The order granting in part and denying in part the motion to tax costs is affirmed insofar as it relates to the appeal bond costs.

Kline, P. J., and Smith, J., concurred.