[No. B038108. Second Dist., Div. Seven. Feb. 20, 1991.]

RICHARD LUBETZKY, Plaintiff and Appellant, v.
ROBERT FRIEDMAN et al., Defendants and Respondents.

**COUNSEL**

Richard Lubetzky, in pro. per., for Plaintiff and Appellant.

Mark B. Shragge for Defendants and Respondents.

**OPINION**

**LILLIE, P. J.**—Plaintiff Richard Lubetzky appeals from an October 14, 1988, order denying his request for sanctions and denying his motion to tax

costs on appeal of defendants Robert Friedman, Erving Friedman, Monica Friedman, and Ariel Ganezer (hereinafter referred to collectively as Friedman). Lubetzky challenged certain items of Friedman's costs, seeking to reduce costs totaling about $514 to $215 on the ground certain expenses were excessive and unreasonable.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1984, Lubetzky filed a tort action against defendants Robert Friedman, Erving Friedman, Monica Friedman, Ariel Ganezer, Charles J. Weissberg, and Friedman Roofing Co., Inc. All but the corporate defendant demurred to the complaint; the court sustained the demurrers and entered an order of dismissal. On appeal from the order of dismissal, the court affirmed that order and awarded costs on appeal to defendants. Defendants filed a memorandum of costs on appeal. Lubetzky filed motion to tax those costs; the trial court reduced certain of defendants' claimed costs, but allowed others. Lubetzky appealed from that order. In a published opinion, *Lubetzky* v. *Friedman* (1988) 199 Cal.App.3d 1350 [245 Cal.Rptr. 589], this court modified the order taxing costs and affirmed it as modified, and ordered defendants were entitled to recover costs on appeal. This award of costs led to the filing of Friedman's memorandum of costs and disbursements on appeal seeking total costs of about $554, which led to Lubetzky's motion to tax costs seeking to reduce certain items by a total of about $297. It is the court's order denying Lubetzky's motion to tax costs which is the subject of this appeal.

Lubetzky's motion to tax costs on appeal and for sanctions claimed that (1) typing costs of $200 and $127.50 (items Nos. 26 and 29) for typing respondents' brief and answer to petition for review were unreasonable and excessive, and should be respectively reduced to $48 and $52.50; (2) photocopying costs of $43.99 and $66.03 (items Nos. 27 and 30) for the brief and answer to petition for review should be reduced to $41.86 and $61.90, respectively, because the costs include an unnecessary copy of each document; (3) the cost for a copy of the clerk's transcript on appeal (item No. 1) should be reduced from $76.65 to $10.77 because Friedman should not be able to recover costs for that part of the transcript pertaining to an abandoned portion of the appeal. In response to Friedman's opposition to the motion to tax costs, Lubetzky requested sanctions "against Mr. Shragge [Friedman's attorney] for filing a frivolous defense to the within motion . . . ."

After hearing, the court denied Lubetzky's motion in its entirety on October 14, 1988. Lubetzky appeals from the October 14, 1988, order.

# I

## Typing Costs

■ Although appellant does not dispute the fact that respondents actually incurred expenses of $200 and $127.50 claimed in items numbers 26 and 29 of their cost bill for typing of their brief in the appeal culminating in the published opinion at 199 Cal.App.3d 1350, and for typing of their answer to a petition for review, he in essence argues that the typists were unreasonably slow, their speeds not comparable with that of an average competent legal secretary.

Appellant claims that the 12.5 hours the typist actually spent on the 19-page appellate brief, and the 8.5 hours another typist spent to type the 22-page answer to petition for review, are both excessive. According to the declarations of two legal secretarial experts submitted by Lubetzky below, the appellate brief could have been typed in three hours and the answer to petition for review could have been be typed in three and one-half hours. Given the rate of $16 per hour charged by the first typist, and the rate of $15 per hour charged by the second typist, the reasonable expenses of typing the two briefs should have been $48 and $52.50 respectively.

■ The trial court's exercise of discretion in granting or denying a motion to tax costs will not be disturbed if substantial evidence supports its decision. (*Jewell* v. *Bank of America* (1990) 220 Cal.App.3d 934, 941 [269 Cal.Rptr. 671].) Whether a cost is reasonable presents a question of fact for the trial court. (See *Bank of Idaho* v. *Pine Avenue Associates* (1982) 137 Cal.App.3d 5, 19 [186 Cal.Rptr. 695].) When an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom; where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed. (*Zirbes* v. *Stratton* (1986) 187 Cal.App.3d 1407, 1412 [232 Cal.Rptr. 653].) This rule applies also to declarations. (*Ibid.*)

■ Declarations submitted by Friedman established that Friedman's counsel prepared the preliminary drafts of the appellate briefs; portions of the drafts were typed by counsel and other portions were written in longhand; Beryl A. Keys, an experienced legal stenographer, typed the final draft of the brief on her Canon word processor and also prepared the table of contents, table of authorities and index after the pages of the final draft had been numbered. The answer to petition for review was typed by Ramon Williams, a legal stenographer who works out of a temporary personnel

agency and who does free-lance legal secretarial work; Williams typed the answer to petition on word processing equipment at the home of Friedman's counsel; counsel was present the entire time and the entire time billed by Williams was spent typing the final draft of the answer to petition.

Friedman's counsel also declared that since he became an attorney in 1946, he has worked with many legal secretaries; based on his firsthand observation of the typing of Keys and Williams, they are both average competent legal stenographers; the hours they billed were actually spent in typing the final drafts of the briefs, and counsel paid for the services so billed.

The trial court impliedly credited Friedman's declarations and chose to disregard or give little weight to the declarations of two typists submitted by Lubetzky, which the trial court was entitled to do. ■ As a general rule, provided the trier of fact does not act arbitrarily, she may reject in toto the testimony of a witness, even though the witness is uncontradicted; the rule applies equally to expert witnesses. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 890 [92 Cal.Rptr. 162, 479 P.2d 362].) ■ The declarations of Lubetzky's typists fail to take into account the facts that Friedman's typists worked from drafts that were partially handwritten, and they also prepared and typed the table of contents, table of authorities and index. A reasonable inference from the declarations submitted by Friedman is that because the typing necessarily involved the work of putting the documents in the proper format, the work proceeded more slowly than had the typist worked from properly formatted or other typewritten material.

We conclude that substantial evidence supports the trial court's implied conclusion that the typing costs were reasonable.

We also find without merit appellant's claim that the typing costs should have been taxed because Keys and Williams rendered their services illegally, allegedly in violation of the municipal business tax license ordinances of the City of Oakland and the City of Vallejo. We do not know if the trial court gave any credence to Lubetzky's statement in his declaration that "I have also been advised by the City of Oakland and the City of Vallejo that both Ms. Keys and Mr. Williams rendered their services illegally, since neither was properly licensed to operate a secretarial service." But, even were we to assume that the typists were not so licensed, such fact is not logically pertinent to the issue of whether the typing expenses were reasonable. Appellant cites no authority for the proposition that the typists' lack of business licenses affects Friedman's ability, as the purchaser of such services, to recover such costs under California Rules of Court, rule 26(c).

Accordingly, the trial court properly allowed the typing expenses claimed by Friedman.

## II

### PHOTOCOPYING COSTS

 Appellant contends that the photocopying and binding costs of $43.99 and $66.03, for respondents' brief on appeal and answer to petition for review (items Nos. 27 and 30 on the memorandum of costs), should be reduced to $41.86 and $61.90 respectively. Although appellant and respondents apparently agree on the total number of briefs required to be filed and served (13 of respondents' brief and 18 of the answer to petition for review), and agree that respondents are entitled to one copy, appellant claims that the typewritten original, from which the photocopies were made, should have been bound and used as one of the briefs, thus reducing the photocopying costs by a few dollars for each brief.

The trial court could have reasonably inferred from the invoices in the record that the photocopy service did *not* bind the original briefs in covers required for filing. Accordingly, the original pages submitted to the copy service could not have been filed or served.

We reject Lubetzky's implied claim that Friedman should have instructed the copy service to make one less copy and to bind the original typewritten brief so as to end up with the same number of bound briefs, thus reducing the copying costs, but not the binding costs. As we do not know the quality of the paper used for the typewritten original, we do not know whether this procedure would have resulted in a brief of the same quality as the photocopies. Lubetzky fails to establish that the typewritten original would have been usable. The trial court impliedly found Friedman could properly claim the costs of reproducing 14 copies of respondents' brief and 19 copies of the answer to petition for review. Such finding is supported by substantial evidence, and the costs therefore are reasonable.

While we agree with respondents' legal contentions, our own calculations of the costs of such briefs differ from the figures proposed by respondents. As we calculate the costs of the respective briefs, given the copy service's fees for copying and binding, respondents are entitled to $43.14 for respondents' brief and $63.43 for the answer to petition for review.[1]

---

[1] With respect to the brief, the copy service charged 6¢ a page for copies, $1.60 per copy for binding, and 8¢ per brief for the covers. The cost of producing 14 twenty-page briefs, including 7 percent sales tax, is then $43.14, rather than the $43.99 claimed by respondents. With respect to the 26-page answer to petition for review, the copy service charged 5.5¢ per page,

## III

### CLERK'S TRANSCRIPT ON APPEAL

The trial court allowed Friedman reimbursement for $76.65, the cost of the entire clerk's transcript on the prior appeal which culminated in the published opinion, *Lubetzky* v. *Friedman*, *supra*, 199 Cal.App.3d 1350. ▇ Lubetzky claims that because he abandoned a portion of the appeal, allegedly because of respondents' failure to serve him with a copy of a May 10, 1985, order pertaining to a sanction award in favor of Friedman, the court should have taxed the cost of that portion of the clerk's transcript pertaining to the abandoned part of the appeal, thereby leaving only $10.77 in costs.

Lubetzky does not challenge the fact that the entire clerk's transcript, for which Friedman paid, was the only clerk's transcript available. Based on our record, the trial court also reasonably could have concluded that Friedman's attorney actually paid for the entire clerk's transcript before he received any notice that Lubetzky was abandoning a portion of the appeal, and thus the cost of the entire transcript was properly claimed, regardless of the abandonment or the reasons for Lubetzky's abandonment of a portion of the appeal. According to a copy of a check payable to the clerk of the superior court for $76.65, dated May 5, 1987, Friedman paid for the entire transcript on May 5, 1987. As Lubetzky's notice of partial abandonment of appeal was filed May 5, 1987, and on that date the notice was also served on Friedman's counsel by mail, it is reasonable to infer that Friedman did not receive such notice until after obtaining the transcript.

We also conclude that substantial evidence supports an implied finding by the trial court that Lubetzky's claim (that Friedman's attorney's conduct caused him to abandon a portion of the appeal) is without merit.[2] Lubetzky

---

$1.60 per copy for binding, and 9¢ per brief for covers. Including 7 percent sales tax, the cost of 19 briefs is $63.43, rather than the $66.03 claimed by respondents.

[2] Our record shows the following proceedings leading up to the abandonment of a portion of the prior appeal: An April 10, 1985, ruling on submitted matter sustained a demurrer to Lubetzky's remaining causes of action, with leave to amend; the order also awarded $250 sanctions to each demurring party to be taxed as costs in the event any of the defendants prevailed. The April 10 minute order was mailed to all parties. On May 10, 1985, Friedman prepared and obtained an order signed by the court which essentially reiterated the contents of the April 10 minute order; the May 10 order was not served on Lubetzky's counsel and Lubetzky's counsel was not aware of this order until receiving opposing counsel's letter of March 9, 1987.

Apparently electing not to amend his complaint, Lubetzky obtained an ex parte order dismissing the action on May 20, 1985, which order did not mention sanctions. On May 21, 1985, Lubetzky filed a notice of appeal from the order of dismissal. On May 30, 1985, Friedman filed a memorandum of costs and disbursements, claiming the $250 sanction as a cost;

contends that Friedman's failure to inform him of the existence of the May 10 order prevented him from including it in the record of the first appeal from the order of dismissal, resulting in the inability of the court to review the award of sanctions. Implicit also in Lubetzky's explanation of the reasons for the abandonment of part of the second appeal is the assertion that the existence of the May 10, 1985, order somehow destroyed the viability of the appeal from the February and March 1987 orders.

The trial court reasonably could have concluded in light of our record, that the May 10, 1985, order pertaining to sanctions was not pertinent to and did not affect the viability of the abandoned portion of the appeal, which, according to the notice, pertained to "the trial court's February 13, 1987 and March 5, 1987 Orders granting Defendant's Motion to Correct Order of Dismissal [of May 20, 1985] by Inclusion Nunc Pro Tunc of Judgment for Costs as Taxed in the Trial Court."

It was reasonable for the trial court to conclude that the failure to include the May 10, 1985, order in the record on the first appeal would not have affected that court's ability to address the issue of sanctions. On his prior appeal from the order of dismissal, Lubetzky purported to appeal from the order imposing sanctions on him; included in that prior record were the April 10, 1985, and August 12, 1985, orders and Lubetzky's motions to strike Friedman's memoranda of costs and disbursements and for orders taxing costs, which motions were directed to the sanctions. However, there was nothing before the court at that time to show that the court had ruled on the award of costs, including sanctions. In the unpublished opinion, the court concluded that "Since the award of costs, including sanctions, in the court below is not found in the record before us, it is not before us on this appeal." (*Lubetzky* v. *Friedman* (Aug. 1, 1986) B014232.) The court noted also that although an order on a motion to tax costs or to strike the cost bill would be separately appealable as an order after judgment, there was no

Lubetzky moved to tax such cost, which motion was denied on August 9, 1985, the minute order indicating that "the court will transfer the file to Judge Rittenband to add the necessary findings for sanctions." An August 12, 1985, minute order, captioned "Findings re Sanctions," sets out the basis for the court's imposition of sanctions on Lubetzky under Code of Civil Procedure section 128.5.

Although Lubetzky attempted to obtain review of the award of sanctions on appeal from the order of dismissal, the court, in an unpublished opinion filed in August 1986, declined to rule on the issue of sanctions. In January 1987, Friedman filed a motion to correct the May 20, 1985, order of dismissal by inclusion nunc pro tunc of a judgment for costs and sanctions, which motion was granted on February 13, 1987. The court, also on February 13, 1987, ruled on Lubetzky's motion to tax costs. The court on March 5, 1987, apparently entered a formal order amending nunc pro tunc the May 20, 1985, order of dismissal to include the sanction award. On February 20 and March 23, 1987, Lubetzky filed notices of appeal from the February 20 and March 5, 1987, rulings; Lubetzky thereafter abandoned that part of the appeal dealing with the amendment of the 1985 order of dismissal to include sanctions.

such order in the record on appeal, and moreover, Lubetzky had appealed only from the order of dismissal, not from an order on motion to tax costs. (*Ibid.*)

We note that Lubetzky did not separately appeal from three other orders of which he was aware, all orders dealing with the same award of sanctions. He did not appeal from the April 10, 1985, order, the August 9, 1985, order, or the August 12, 1985, order, the latter two orders essentially reaffirming or amending the original award of sanctions of April 10, 1985.

Given the procedural history of this case, and the court's unpublished opinion on the first appeal, the trial court reasonably could have concluded that the absence of the May 10, 1985, order from the record of the first appeal from the order of dismissal did not result in the court's inability to review the sanction award. Accordingly, the trial court reasonably could have found that Friedman's alleged misconduct did not prevent Lubetzky from obtaining review of the sanction award on the first appeal.

The trial court also reasonably could have concluded that Lubetzky failed to establish any connection between the May 10, 1985, order and the viability of his appeal from the 1987 orders. In sum, the trial court reasonably could have rejected Lubetzky's claim that Friedman's conduct with respect to the May 10 order necessitated abandonment of part of the 1987 appeal.

As substantial evidence supports the trial court's implied conclusion that Friedman's conduct did not necessitate the abandonment of a portion of the prior appeal, the trial court properly denied Lubetzky's motion to reduce Friedman's cost for a copy of the entire clerk's transcript of the prior appeal.

## IV

### ORDER DENYING SANCTIONS

Appellant claims that the trial court abused its discretion in refusing to award him sanctions under Code of Civil Procedure section 128.5, based on Friedman's alleged bad faith opposition to his motion to tax costs and alleged misleading of the trial court on the law with respect to costs on appeal.

We do not reach the merits of this contention because we have serious doubt that the order is appealable. Appellant suggests that the order denying sanctions under section 128.5 is appealable as an order made after final

judgment pursuant to Code of Civil Procedure section 904.1, subdivision (b). He cites two cases which discuss the merits of the lower court's denial of a request for sanctions, but do not discuss the issue of the appealability of such an order. ■ A case is not authority for an issue not considered therein. (*Department of Justice* v. *Workers' Comp. Appeals Bd.* (1989) 213 Cal.App.3d 194, 202 [261 Cal.Rptr. 130].)

■ "Witkin explains that there are three requirements which must be met for such an order [an order made after judgment within the meaning of Code of Civil Procedure section 904.1, subdivision (b)] to be appealable: the judgment which precedes the order must be 'final' in the trial court, the appeal from the order may not present the same issues as an appeal from the judgment itself, and the order must either affect the judgment or relate to it either by enforcing it or staying its execution." (*Williams* v. *Thomas* (1980) 108 Cal.App.3d 81, 84 [166 Cal.Rptr. 141].) We do not believe the instant order can meet the above requisites. If the preceding judgment to which subdivision (b) of Code of Civil Procedure section 904.1 refers is deemed to be the order of dismissal of Lubetzky's complaint, the instant order denying sanctions cannot be said to affect the order of dismissal. If the preceding judgment is deemed to be the order denying Lubetzky's motion to tax costs, the instant order denying sanctions presents essentially the same issues as an appeal from the order denying the motion to tax costs: an appellate determination that the trial court properly denied Lubetzky's motion to tax costs necessarily resolves the issue of whether Friedman's opposition to such motion was meritorious and not in bad faith.

Were we to conclude the order denying sanctions to be appealable, we would find Lubetzky's appeal therefrom to be without merit for the same reasons expressed by the court in addressing the merits of a prior similar claim in *Lubetzky* v. *Friedman*, *supra*, 199 Cal.App.3d 1350, 1358.

## V

### FRIVOLOUS APPEAL

Although respondents request sanctions against Lubetzky for pursuing a frivolous appeal, we do not deem this case an appropriate one for the imposition of sanctions under the standards of *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 648-651 [183 Cal.Rptr. 508, 646 P.2d 179].

### DISPOSITION

The order of October 14, 1988, is modified by directing that as to Friedman's memorandum of costs and disbursements, item number 27 be re-

duced from $43.99 to $43.14 and item number 30 be reduced from $66.03 to $63.43. As so modified, the order is affirmed. Respondents are entitled to costs on appeal.

Johnson, J., and Woods (Fred), J., concurred.