Filed 10/5/21  Robertson v. Larkspur Courts CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| J. MARTIN ROBERTSON,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>LARKSPUR COURTS et al.,<br><br>Defendants and Respondents. | A160942<br><br>(Marin County<br>Super. Ct. No. CIV 1504551) |

Plaintiff J. Martin Robertson, appearing in propria persona, appeals from trial court rulings that denied his requests for postjudgment attorney fees, costs, and interest, and required him to submit a release and sign a dismissal of the action with prejudice.  We affirm.[1]

I.

BACKGROUND

This is the third appeal Robertson has filed in this matter, the first two having resulted in unpublished decisions.  (*Robertson v. Larkspur Courts* (May 22, 2018, A152226) [nonpub. opn.] (*Robertson I*); *Robertson v. Larkspur Courts* (Jun. 19, 2019, A154206) [nonpub. opn.] (*Robertson II*).)  Some of the

---

[1] Robertson's requests for judicial notice filed on January 15 and May 26, 2021, are denied to the extent we have not already ruled on them, as the remaining materials sought to be judicially noticed are unnecessary for our disposition of this appeal.

1

underlying facts and relevant history of the case come from our prior opinions.

Robertson, who is a lawyer, filed this suit in December 2015 against eight entities alleging they inappropriately responded to the discovery of mold in his apartment. Four of these entities, the respondents, appeared in the case.[2] Robertson and respondents reached a settlement and signed an agreement under which Robertson agreed to dismiss his claims in exchange for $28,000. The trial court entered judgment on May 4, 2017, based on the settlement.

Both before and after judgment was entered, respondents tried to pay the $28,000 to Robertson. On several occasions, they asked him to provide personal information, such as a date of birth and social security number or tax identification number.[3] They claimed that their insurer, AIG, needed this information to process the payment in order to comply with Medicare reporting requirements. Robertson "ignore[d] and refuse[d] [respondents'] several requests to obtain this information."

On May 18, 2017, respondents wrote to the trial court to ask it to order Robertson to provide the social security information, explaining that he had been unresponsive to their requests for that information. A few days later, Robertson moved to vacate the judgment because he was dissatisfied with its terms. The trial court eventually denied this motion and separately awarded

---

[2] Respondents are Teachers Insurance and Annuity Association of America, Riverstone Residential Group, LLC, Greystar RS CA, Inc., and Greystar Real Estate Partners, LLC.

[3] We refer to this information as "social security information" with the understanding that information other than or in addition to a social security number was sought.

2

sanctions against Robertson. Robertson appealed, and we affirmed both the judgment and the sanctions award in *Robertson I*.

As Robertson was pursuing his motion to vacate the judgment, respondents filed their own motion, styled as a motion to enforce the judgment, seeking an order requiring him to provide the social security information. The trial court did not rule on respondents' motion, however, until after Robertson filed his appeal in *Robertson I*. In its ruling, the court granted respondents' motion to enforce the judgment and ordered Robertson to provide the social security information. Robertson appealed that ruling in *Robertson II*.

In *Robertson II*, we did not resolve the merits of the parties' dispute regarding the social security information. Instead, we vacated the trial court's order granting the motion to enforce the judgment on the basis that the court lacked jurisdiction to enter it while *Robertson I* was pending. We reached our "conclusion reluctantly, however, because we recognize[d] the possibility that the parties [would] remain cemented in their positions." (*Robertson II*, *supra*, A154206.) We concluded by expressing "our fervent hope that, to avoid [yet another appeal], the parties [would] reasonably and in good faith attempt to resolve their remaining differences." (*Ibid.*)

Ignoring this entreaty, Robertson continued to file pleadings and documents prolific in both number and size in the trial court. Included among these filings were three of the four motions at issue in this appeal.[4] These motions sought an award of postjudgment attorney fees in the amount of $597,900, postjudgment costs, and interest on the judgment. The fourth

---

[4] The three motions were titled "Motion for Costs (Other than Attorney[] Fees)," "Motion for Attorney Fees," and "Motion to Determine Prevailing Party Under Second Lease for Purposes of Civil Code 1717." (Unnecessary capitalization omitted.)

3

motion at issue is respondents' second motion to enforce the judgment. In it, respondents asked the trial court to (1) enforce the judgment's requirement that Robertson sign a release and (2) deny him postjudgment interest. Robertson filed over 1,300 pages of documents in connection with these four motions.

In April 2020, before the four motions were ruled upon, AIG sent Robertson a check for $28,000, even though he had not provided the social security information or the release and had not paid the sanctions award or appellate costs he owed as a result of *Robertson I*. In their appellate brief, respondents explain that they did so because they were exasperated and, "trust[ing] that [the Center for Medicare and Medicaid Services] would look at the unique circumstances of this case and not impose . . . onerous fines," decided to "simply sacrifice their own rights under the [j]udgment by literally sending payment to Robertson before he signed a release, and also without Medicare reporting information as needed by [AIG]." Robertson returned the first check AIG sent to him, complaining about language in a transmittal letter, but apparently accepted a second check.

In August 2020, the trial court heard the four motions. It denied Robertson's three motions, and it granted respondents' motion to enforce the judgment. It ordered the parties to "jointly lodge a signed mutual release[,] if they agree on [one,] or . . . each separately lodge a proposed mutual release if they do not agree on [one]." It also ordered Robertson "to sign a standard form Dismissal of Prejudice of this action." Robertson appealed.[5]

---

[5] To the extent Robertson challenges aspects of the judgment in this appeal, we reject them because the judgment was affirmed in *Robertson I*. To the extent he challenges aspects of trial court rulings on matters other than the four motions, we reject them because those rulings were not appealed and are not part of this appeal.

## II.
### DISCUSSION

*A.*     *The Trial Court Had Jurisdiction to Consider Respondents'*
        *Motion to Enforce the Judgment.*

Robertson argues that the trial court lacked jurisdiction to consider respondents' second motion to enforce the judgment because the "parties themselves [had not asked] the trial court to retain jurisdiction" under Code of Civil Procedure section 664.6, which addresses judgments entered pursuant to a settlement.[6]  (Unnecessary capitalization omitted.)  The argument is meritless.

Robertson's argument is based on the following sentence in section 664.6:  "If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."  He extrapolates from this sentence that a trial court has no jurisdiction to enforce a judgment absent such a request.  He is mistaken.  The Legislature added the sentence in response to a 1989 Court of Appeal decision, which held that trial courts lacked subject matter jurisdiction to enforce judgments in *dismissed* cases unless parties first moved to set aside the dismissal.  (See *Viejo Bancorp, Inc. v. Wood* (1989) 217 Cal.App.3d 200, 207.)  The sentence was added to make clear that before a case is dismissed, parties may ask the court to retain jurisdiction to enforce the parties' settlement after dismissal so that it is unnecessary to later seek to set aside the dismissal.  (*Wackeen v. Malis* (2002) 97 Cal.App.4th 429, 433.)  Thus, the sentence has no bearing on a court's continued jurisdiction to enforce a judgment in a case, such as this one, that has not been dismissed.

---

[6] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

In fact, the trial court here retained jurisdiction to consider respondents' motion to enforce the judgment under the judgment's express terms. The judgment specifically stated that the "Stipulation for Settlement is binding and may be enforced by a motion under [section] 664.6 or by any other procedure permitted by law." Thus, the court properly heard respondents' motion to enforce the judgment.

### B. The Trial Court Correctly Denied Robertson's Request for Postjudgment Attorney Fees.

The trial court found that Robertson was not entitled to postjudgment attorney fees for several reasons. It found that there was no contractual basis for such an award, the parties had specifically agreed that each party would bear their own fees, and Robertson was not entitled to fees because he was representing himself. Finally, it found that Robertson was separately not entitled to recover under section 1021.5, which addresses attorney fees in cases resulting in a public benefit, because none of the key elements of that statute were satisfied. We review the court's ruling de novo. (See *San Francisco CDC LLC v. Webcor Construction L.P.* (2021) 62 Cal.App.5th 266, 285 [" 'a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo' "].)

We affirm the trial court's denial of postjudgment attorney fees on the basis that Robertson was representing himself. "[T]he term 'attorney fees' implies the existence of an attorney-client relationship, i.e., a party receiving professional services from a lawyer." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1092.) "An attorney who chooses [self-representation], and does not pay or become liable to pay any sum out of pocket for legal services, may not recover reasonable attorney fees as compensation for the time and effort expended by the attorney and the professional business opportunities lost as a result." (*Mix v. Tumanjan Development Corp.* (2002)

6

102 Cal.App.4th 1318, 1323, citing *Trope v. Katz* (1995) 11 Cal.4th 274, 279–280.)

Furthermore, even if Robertson were otherwise entitled to attorney fees, we would affirm the ruling on the basis of section 685.040, authority that was not relied on by the trial court or cited by the parties in their appellate briefs. (See *Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 517 [appellate court reviews decision of lower court, not its reasoning].) This section is part of the "Enforcement of Judgments Law," which governs the enforcement of judgments by private parties. (§ 680.010; *Cal. Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 346, fn. 1.) Section 685.040 states, "Attorney's fees incurred in enforcing a judgment are *not* included in costs collectible under this title unless otherwise provided by law. Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title *if the underlying judgment includes an award of attorney's fees to the judgment creditor*." (Italics added.)

The underlying judgment here did not include an award of attorney fees. It expressly stated that "[e]ach [party] shall bear his/her/its attorneys' fees and court costs." Thus, the trial court properly denied Robertson's request for postjudgment fees—which Robertson sought for the time he spent opposing respondents' position that he needed to provide the social security information before respondents would pay the amount due—because neither the settlement agreement nor the underlying judgment included an award of fees.

Finally, we agree with the trial court's ruling under section 1021.5 specifically, because—notwithstanding Robertson's insistence to the contrary—Robertson's postjudgment efforts vindicated personal, not public, interests. (*Hall v. Department of Motor Vehicles* (2018) 26 Cal.App.5th 182,

7

192 ["section 1021.5 was not designed to reward litigants motivated by their own personal interests who only coincidentally protect the public interest"].) In short, the trial court properly denied Robertson's request for postjudgment attorney fees because there was neither an award of fees in the underlying judgment nor an attorney-client relationship, and he was not separately entitled to fees under section 1021.5.

## C. *The Trial Court Did Not Abuse Its Discretion in Denying Robertson Postjudgment Costs.*

The trial court also denied Robertson his postjudgment costs. It ruled that he was not entitled to costs because he was not a "prevailing party" as defined in section 1032, subdivision (a)(4), and he was not otherwise entitled to costs because the underlying judgment provided that the parties were to bear their own costs.

We again affirm the trial court's ruling, although we do not adopt its rationale. Section 1032, the provision relied upon by the trial court, states that "[e]xcept as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (§ 1032, subd. (b).) But in the case of costs to enforce a judgment, section 685.040 expressly provides otherwise, stating, "The judgment creditor is entitled to the *reasonable and necessary* costs of enforcing a judgment." (Italics added.) Thus, in contrast to section 1032, section 685.040 sets a "reasonable and necessary" standard for recovering the type of costs at issue. The difference in the statutory language means that many costs are awarded as a matter of right to the prevailing party, but costs to enforce the judgment are awarded in the discretion of the trial court and regardless of prevailing-party status.

As a consequence, we review the trial court's ruling deferentially, asking only whether substantial evidence supports its determination that

8

particular costs were not reasonable. (*Frei v. Davey* (2004) 124 Cal.App.4th 1506, 1512; *Lubetzky v. Friedman* (1991) 228 Cal.App.3d 35, 39.) In denying Robertson the costs at issue, the trial court found he had engaged in "vexatious and obstructionist conduct throughout these proceedings in unreasonably preventing the timely satisfaction of the money judgment." Ample evidence supports this finding.

To begin with, soon after the judgment was entered, Robertson filed his motion to vacate it. The trial court not only denied the motion but imposed sanctions on the grounds that motion was "a bad-faith tactic and . . . frivolous ('totally and completely without merit')." Robertson then appealed the court's ruling, further delaying the proceedings, on grounds that we concluded in *Robertson I* were at best meritless, and at worst frivolous. The remittitur in *Robertson I*, which Robertson unsuccessfully attempted to recall, was issued on August 20, 2018.[7]

The meritless appeal in *Robertson I* resulted in delays beyond the period that the appeal was pending. As we have said, while *Robertson I* was pending, the trial court entered an order attempting to enforce the judgment, which led to the appeal in *Robertson II* and our order vacating the court's order. The remittitur in *Robertson II* was not issued, and jurisdiction was thus not transferred back to the trial court, until September 26, 2019.

The record also demonstrates that Robertson did not work constructively to agree upon and provide a mutual release as the judgment required. He has cited no evidence showing he has *ever* made any meaningful effort to satisfy his obligation to provide a release. And as we

---

[7] Notwithstanding the finality of the judgment and sanctions order, Robertson continued not to pay to respondents the sanctions ($1,280) or appellate costs (ultimately calculated to be $463.20) they were due under *Robertson I*.

discuss in more detail below, he was at first unresponsive and later unconstructive in attempts to resolve the dispute about disclosure of the social security information. Thus, because substantial evidence supports the finding that Robertson was obstructionist, we cannot conclude under the applicable standard of review that the trial court abused its discretion in denying him his costs to enforce the judgment.

D.     *The Trial Court Properly Denied Postjudgment Interest.*

We lastly consider the trial court's ruling denying Robertson postjudgment interest. The court found that respondents made an "unconditional tender of payment of the settlement amount to [Robertson]" and that the delay in payment was, again, due to Robertson's "vexatious and obstructionist conduct." We affirm this ruling as well.

Unlike prejudgment interest, postjudgment interest is not awarded in the discretion of the trial court. Rather, postjudgment interest "bears interest at the legal rate from its date of entry by force of law, regardless of whether [the judgment] contains a declaration to that effect." (7 Witkin, California Procedure (5th ed. 2008) Judgment, § 326, p. 932; see § 685.020, subd. (a); see also *Big Bear Properties, Inc. v. Gherman* (1979) 95 Cal.App.3d 908, 913 [under Article XV of the California Constitution, "all money judgments, by operation of law, bear interest at the legal rate from date of entry"].) The Legislature has set the legal rate of interest at 10 percent per year (§ 685.010, subd. (a)), which is calculated as simple interest, not compound interest. (See *Westbrook v. Fairchild* (1992) 7 Cal.App.4th 889, 893.)

Section 685.030, however, allows a judgment debtor to stop the accrual of some or all postjudgment interest by satisfying the judgment in part or in full. The statute provides that "interest ceases to accrue on the date the

10

judgment is satisfied in full." (§ 685.030, subd. (b).) Interest also ceases to accrue on any part of the money judgment that is "partially satisfied" as of "the date the part is satisfied." (§ 685.030, subd. (c).) The date the money judgment is satisfied in full or in part is the earliest of when "satisfaction is actually received by the judgment creditor," when "satisfaction is tendered to the judgment creditor or deposited in court," or when there has been "any other performance that has the effect of satisfaction." (§ 685.030, subd. (d)(1)–(3).) These provisions "[p]lace the burden on the [judgment debtor] to take [the] steps necessary to terminate accrual of postjudgment interest." (*In re Marriage of Green* (2006) 143 Cal.App.4th 1312, 1324.)[8]

We review factual determinations made in connection with the satisfaction of a judgment for substantial evidence. (*Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 748.) "We will presume the existence of every fact the finder of fact could reasonably deduce from the evidence in support of the judgment or order. [Citation.] Moreover, the constitutional doctrine of reversible error requires that '[a] judgment or order of the lower court [be] presumed correct.' [Citation.] Therefore, all intendments and presumptions must be indulged to support the judgment or order on matters as to which the record is silent, and error must be affirmatively shown. [Citation.] The appellant has the burden to demonstrate there is no substantial evidence to support the findings under attack." (*Id.* at pp. 748–749.)

---

[8] Judgment debtors can suspend the enforcement of a money judgment that has been appealed by posting an undertaking, more commonly known as a bond. (§ 917.1, subd. (a).) Such an undertaking stays enforcement of the judgment, but it does not stop interest from accruing while the appeal is pending if the judgment is affirmed or the appeal is withdrawn. (§ 917.1, subd. (b).)

11

Robertson fails to demonstrate a lack of evidence supporting the trial court's findings that respondents sufficiently tendered or otherwise satisfied the judgment amount and that the delay in payment was due to his obstructionism.  He argues that respondents' tender was not unconditional because AIG's initial insistence that he provide the social security information was based on an incorrect view that it had a legal obligation to report the settlement payment.  The argument is unpersuasive.

" 'A tender is an offer of performance made with the intent to extinguish the obligation.  (Civ. Code, § 1485.)' [Citation.]  A tender must be one of full performance (Civ. Code, § 1486) and must be unconditional to be valid." (*Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 580.)  A judgment creditor must timely voice any objections to the tender. (*Noyes v. Habitation Resources, Inc.* (1975) 49 Cal.App.3d 910, 913.)  In particular, "[a]ll objections to the mode of an offer of performance, which the creditor has an opportunity to state at the time to the person making the offer, and which could be then obviated by him [or her], are waived by the creditor, if not then stated." (Civ. Code, § 1501; *Noyes*, at p. 913 [law governing "routine commercial transactions" applies to payments to judgment creditors]; accord *Long v. Cuttle Construction Co.* (1998) 60 Cal.App.4th 834, 837.)

Both before and shortly after judgment was entered, respondents sent Robertson emails asking him for the social security information so they could pay him the judgment amount.  In correspondence dated April 20, 2017— *before* the judgment was entered—respondents clearly told Robertson that "to process the settlement payment, [they] need[ed] to know . . . [¶] [w]ho the check should be made payable to, . . . [¶] [w]here is the check supposed to be mailed," and "[w]hat is your Tax ID No. and/or Social Security Number and

12

Date of Birth." They promised that "[t]his information will not be disclosed or used for any other purpose other than to process the settlement payment."

As we have said, on May 18 respondents reported to the trial court that Robertson had been "non-responsive to all of these requests," and they asked the court to "require [Robertson] to disclose his [social security information] to [their] counsel of record." They reiterated that the "information will solely be used to remit the settlement payment to [Robertson]. [Respondents'] counsel will destroy said information subsequent to the issuance of the settlement payment."

In its February 2018 ruling on respondents' first motion to enforce the judgment, the trial court addressed the parties' dispute about whether respondents needed the social security information to pay Robertson. Although we vacated the ruling on jurisdictional grounds in *Robertson II*, we appreciate the court's sensible reasoning and measured approach in addressing the issue. The court found that respondents "established that access to [Robertson's social security information was] necessary for them to satisfy their federal Medicare reporting requirements. (See 42 U.S.C. § 1395y(b)(8)(C).)" It agreed with Robertson that he has privacy interests in the information, but it found that those interests were outweighed by AIG's "legitimate and necessary" need for the information, especially since AIG was "potentially subject to significant financial penalties if [it failed] to report the settlement." In an effort to protect Robertson's interests, the court "proposed strict terms for a protective order" that would have imposed limits on the information's use, and respondents agreed to be bound by such an order. The court concluded that the "disclosure of [the] additional information" would not materially alter the terms of the settlement, but instead would be "simply

13

a ministerial act, one reasonably necessary so that material terms of the settlement [could] be executed while complying with federal law."

We find no fault with the trial court's ruling, although we need not decide whether AIG in fact had a legal obligation to report the settlement. In our view, it was enough that AIG had a reasonable and good-faith basis to believe it had such an obligation. Thus, AIG's request for the social security information is not fairly characterized as a condition of payment, but is more accurately characterized as a good-faith attempt to obtain information AIG reasonably believed was necessary to transmit the payment. In turn, we view Robertson's non-responsiveness to be akin to a judgment creditor's refusal to give a judgment debtor wiring instructions needed to transmit funds to the creditor's account.

We also find it notable that throughout the postjudgment proceedings, alternatives were proposed to alleviate Robertson's concerns about providing the social security information. They included the trial court's proposal to impose a strict protective order on the information and respondents' proposals to agree to use the information for remittance purposes only and then to destroy it, to accept a signed release from Robertson saying he would be responsible for the reporting, and to accept a letter stating that he was ineligible for Medicare. (See *Pioneer Electronics (USA), Inc. v. Superior Court* (2007) 40 Cal.4th 360, 371 [" '[I]f intrusion is limited and confidential information is carefully shielded from disclosure except to those who have a legitimate need to know, privacy concerns are assuaged' "].) Robertson fails to show that he even responded to these efforts, much less to explain why they would not have satisfied any legitimate concerns he had.

Finally, even if Robertson's objection to providing the social security information had any merit, he waived the objection by failing to raise it in a

14

timely way.  The issue about the social security information was raised first not by Robertson objecting to disclosing it, but instead by *respondents* who were trying to pay the judgment amount and believed they needed the information to process the payment.  Rather than expressing a concern about providing the social security information or showing a desire to be paid the judgment amount, Robertson simply pursued his motion to vacate the judgment, which the trial court found to be "a bad-faith tactic and . . . frivolous."  Thus, even though both before and after the judgment was entered Robertson knew that AIG thought it needed the social security information to pay him, he expressed no objection to providing the information until much later, after he embarked on an unsuccessful effort to vacate the judgment.

This case presents unusual facts and a unique procedural history.  But the record as a whole reflects substantial evidence supporting the findings that respondents sufficiently tendered payment and that the delays in payment were due to Robertson's obstructionism.  The trial court properly denied Robertson postjudgment interest because satisfaction of the judgment was tendered (§ 685.030, subd. (d)(2)) or there was other performance having the effect of satisfaction.  (§ 685.030, subd. (d)(3).)

## III.
### DISPOSITION

The trial court's August 2020 orders denying Robertson attorney fees, costs, and interest are affirmed.  The trial court's order requiring Robertson to sign and provide a release and dismissal of this action with prejudice is affirmed.  Respondents are awarded their costs on appeal.

15

_____

Humes, P.J.

WE CONCUR:


_____

Margulies, J.


_____

Banke, J.


*Robertson v. Larkspur Courts*  A160942