Filed 3/30/22  P. v. Tolbert CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br>        Plaintiff and Respondent,<br>v.<br><br>KIM E. TOLBERT,<br>        Defendant and Appellant. | A161878<br><br>(Alameda County Super.<br> Ct. No. 19CR015262) |

Defendant Kim E. Tolbert appeals from the trial court's denial of her motion to withdraw her March 13, 2020 plea of no contest to one felony count of making a criminal threat.  She argues that the trial court abused its discretion because she proved by clear and convincing evidence that she entered her plea only because of the severe coercion and duress[1] caused by the outbreak of the COVID-19 virus.  As she describes it, she otherwise would have been left stranded in Alameda County's Santa Rita Jail with immune-compromising physical conditions that threatened her life and an uncertain trial date.  She further argues this duress was exacerbated by her attorney's

---

[1]  For simplicity's sake, we refer to Tolbert's arguments as being about "duress" because Tolbert has used "duress" and "coercion" interchangeably below and in this appeal.  Further, "duress" is defined as, among other things, "coercion." (Dictionary.com <https://dictionary.com/browse/duress> [as of March 29, 2022].)

failure to argue a bail motion that could have won her release from jail, which she contends constituted ineffective assistance of counsel.

Tolbert entered her plea under extraordinarily stressful circumstances caused by the COVID-19 outbreak, which disrupted our courts and caused much concern about the health of people in custody around the time that Tolbert entered her plea.  Assuming for the sake of argument that these stressful circumstances constitute duress, Tolbert nonetheless has not met her appellate burden of showing that she proved by clear and convincing evidence below that she pleaded no contest *because* of this duress, and there is substantial evidence upon which the trial court could have reasonably relied to conclude that she entered her plea freely and voluntarily for other reasons.  Therefore, she has not shown an abuse of discretion.  Tolbert also fails to show that she received ineffective assistance of counsel.  We therefore affirm.

## BACKGROUND

## I.

### *The Initial Criminal Proceedings*

In November 2019, the Alameda County District Attorney filed an information charging Tolbert with one felony count of making a criminal threat (Pen. Code, § 422, subd. (a)[2]).  This was accompanied by an enhancement allegation, made under section 12022.1, that Tolbert committed the offense while released on her own recognizance in another criminal case.  The information also gave notice that the criminal threat offense was a "serious felony" under sections 1192.7, subdivision (c) and 1170, subdivision (h)(3) that required Tolbert to serve any sentence in state prison.

---

[2]  Statutory references are to the Penal Code unless otherwise stated.

At the preliminary hearing that led to the filing of the information, the prosecution called a witness who testified that on the morning of September 3, 2019, she was meeting with a contractor in the front yard of a house that her husband owned in Oakland, California. The witness was remodeling in order to sell the house, which was next door to Tolbert's house. Tolbert, while standing about eight to ten feet away on her own property behind a short fence, "started screaming at" the neighbor "to leave [Tolbert's] kids alone and stop bothering them." The neighbor told Tolbert she had never met Tolbert's children and suggested that Tolbert "calm down, go in the house and take it easy." Tolbert made eye contact with her and said, "I'm going to kill you" and "I'm going to slit your throat," and she ran her index finger across her own throat. She picked up a "very large rock" of about one foot diameter, raised it up and said, "I'm going to kill you with this." As she looked at the neighbor and displayed "a big smile on her face," Tolbert threw the rock but lost her balance as she did so. The rock struck the fence separating the properties, causing minor damage. Tolbert laughed. The neighbor, frightened by Tolbert's actions, called the police, who came and arrested Tolbert.

Upon her arrest, Tolbert was placed in Alameda County's Santa Rita Jail. The court set her bail at $150,000 and denied her oral motion to be released on her own recognizance. It also determined that Tolbert was financially ineligible for a public defender's services.

In October 2019, through an attorney, Tolbert filed a motion to reduce her bail. In a supporting declaration, her attorney stated that about a month before the incident with her neighbor, Tolbert was detained for psychiatric evaluation after a police officer observed a loaded firearm in her home. This led to Tolbert being charged as a felon in possession of a firearm, the offense

3

referred to in the enhancement allegation of the November 2020 information. The attorney stated that Tolbert, whether mistaken or not, had thought her right to possess a firearm, taken away as a result of a 30-year-old conviction, had been restored.

The trial court continued the bail motion hearing, but the record does not indicate it ever ruled on the motion. At the end of the preliminary hearing, which occurred on November 1, 2019, the court kept Tolbert's bail at $150,000. Also in November 2019, Tolbert's attorney, over Tolbert's objection, declared she had a doubt about Tolbert's competency. The court suspended proceedings and ordered Tolbert's evaluation. Tolbert stated her intention to retain new counsel.

In December 2019, Tolbert wrote to the trial court and asked it to review her bail. She stated she was a professional who had worked as an accountant and a civil servant, was a mother of three adult children, a licensed real estate agent, a notary and a "whistleblower" involved in a legal dispute with her former employer, had separated from her husband after a long marriage and, in 2017, had moved from San Francisco to Oakland. She contended that Bay Area law enforcement and the judicial system had abused her over the past several years. The record does not indicate that the court acted on this letter.

In January 2020, the court found Tolbert competent to stand trial. Tolbert, through a new attorney, Thomas Ogas, sought a speedy trial, which the court set for March 2020. The next month, the court vacated this date and referred Tolbert to the Alameda County Behavioral Health Court, which did not accept her case. The record appears to indicate that the court rescheduled Tolbert's trial for May 1, 2020, and the court calendared a

4

March 13, 2020 disposition and setting hearing at which it would also consider another bail reduction motion by Tolbert.

## II.

### *The Negotiated Disposition of Tolbert's Case on March 13, 2020*

Ogas did not file motion papers in support of a bail reduction for Tolbert and did not argue for a reduction at the March 13, 2020 hearing. Instead, the parties told the court they had agreed that Tolbert would plead no contest and would be released from custody and placed on probation for three years, during which time she would meet weekly with a therapist. If she successfully completed her first year of probation, she could move to reduce her felony conviction to a misdemeanor without the prosecution's objection. In a plea form that she executed that same day, March 13, 2020, Tolbert stated she was offering her no contest plea "freely and voluntarily and of my own accord, and with full understanding of all the matters set forth in the Information/Indictment and in this waiver form." Ogas stated on the form that he had reviewed it with Tolbert, explained each of the rights set forth in it to her, answered her questions, concurred with her waiver of her rights and entry of her plea, and believed she was acting "knowingly, intelligently, and voluntarily." Also, Ogas stipulated that the preliminary hearing transcript provided a factual basis for the plea.

The court questioned Tolbert about her understanding of her rights and waiver of them, reviewed her plea form with her and told her the offense to which she was pleading was a strike offense that exposed her to a maximum penalty of three years. It found that Tolbert was fully informed of her rights, understood the nature of the offense charged and the possible penalties and consequences of conviction, and had "made a knowing, free, voluntary and

5

intelligent waiver" of her rights.  It accepted her plea, found a factual basis for it, found her guilty and set a sentencing hearing.

## III.

### *The Court's Denial of Tolbert's Motion to Withdraw Her Plea*

In October 2020, after multiple continuances of the sentencing hearing, Tolbert moved to withdraw her no contest plea for good cause under Penal Code section 1018.  Represented by a new attorney, Tolbert contended that, after conferring with her previous attorney, Ogas, and in order to save her life, she had pleaded no contest on March 13, 2020, for the sole purpose of securing her immediate release from jail in the face of uncertainty over when jury trials might occur during the COVID-19 pandemic and the life-threatening risks she faced during the pandemic because of her immune-compromising health conditions.  She also argued that Ogas's failure to seek a reduction in her bail on March 13, 2020, constituted ineffective assistance of counsel.

In a declaration in support of the motion, Tolbert stated that she was innocent of the criminal threat charge and had intended to contest it in a jury trial.  However, she suffered from Sjögren's syndrome and had undergone a year-long treatment for an incurable lymphoma.  Given these health conditions and the COVID-19 outbreak, she "felt compelled and under duress to get out of jail to try to save my life.  I was supposed to have a bail hearing on March 13, 2020, but Mr. Ogas told me I could not have it and he did not file any paperwork for the hearing.  Mr. Ogas did not question me about any immune related issues or diseases which put me in a high risk category for Covid-19."  He also did not tell her the impact of a conviction on her real estate agent license, which she stated she was "in danger of losing."

6

Instead, Ogas told her he was uncertain when her scheduled trial would occur because the courts were closing down and "the only way I could get out of custody that day was to take a plea deal." She continued, "Mr. Ogas spent only a few minutes with me before he had me filling out the plea form. I only changed my plea . . . to get out of jail because I believed I could die in jail if I contracted Covid-19 there and I would be more likely to catch the virus in custody than I would if released." She added, "Had I not been facing dying in jail if I contracted Covid-19 there because I have serious immune issues, I would never have changed my plea to no contest for the criminal threat charge."

The only evidence Tolbert submitted to corroborate her contention that she suffered from two immune-compromising health conditions as of March 13, 2020, was attached as "Exhibit C" to her motion and brief. It appears to be an October 21, 2020 print-out of a medical report of some kind, and is possibly a mobile phone screenshot from June 27, 2017, a date that appears to have been overlaid on the report. The document is untitled, unauthenticated, unexplained and appears to be part of a larger document, part of which is covered by the overlaid date. It states under "Diagnosis" several matters, including "Sjogrens W/ Systemic Dz M35 09" and "T cell lymphoma followed @ Stanford," without further explanation.

Ogas also submitted a declaration in support of Tolbert's motion. He stated that he did not file any paperwork regarding Tolbert's noticed bail motion and did not attempt to argue it on March 13, 2020, "because there was not a change in circumstances," and that "[t]he emergency bail schedule which Alameda County ultimately used, was not in place on March 13, 2020. Even under the later issued emergency bail schedules, Ms. Tolbert had excluding charges." Also, on March 12, 2020, the Governor ordered

7

restrictions on in-person gatherings because of the pandemic, causing Ogas to think it was likely the courts would shut down very soon. Ogas stated the shutdown in fact occurred on March 17, 2020, and delayed trials until mid-July 2020. Ogas continued, "Due to the likelihood of a shutdown, it was clear to me that jury trials set in the coming months may not be able to proceed. Before Ms. Tolbert accepted the plea deal, I informed her that I cannot predict when jury trials would resume if they were suspended." He negotiated a deal that enabled her to be released later that night. Before March 13, 2020, "it did not appear that Ms. Tolbert was inclined to take any plea deal." He did not refer to any health conditions or concerns of Tolbert's, or any discussion between them about those subjects.

Tolbert's new attorney, Laura Robinson, also submitted a declaration in support of Tolbert's motion. She stated that it "was clear by February, 2020 that people with cancer and immune compromising diseases" were at higher risk of serious illness from COVID-19 and that by the second week of March 2020 she suspected that jury trials were likely to be continued. Also, although there was not yet an emergency bail schedule in place by March 13, 2020, "it was clear that any inmate in the high risk category for the virus constituted a change in circumstances, for which bail or OR [presumably release on one's own recognizance] should be argued." Robinson opined that Ogas's failure to inquire about Tolbert's medical conditions and then argue for "lower bail or OR" constituted ineffective assistance of counsel, and that if he had informed the court of her medical conditions and argued for such relief, there was a "strong chance" court would have granted one or the other.

The People opposed Tolbert's motion. They emphasized that Tolbert's motion papers and declarations did not indicate that she raised her health

8

conditions or concerns with Ogas before her March 13, 2020 plea hearing, and that at the hearing she neither raised those issues nor indicated she was pleading no contest under duress to protect her health.

The same judge who had accepted Tolbert's plea presided over the hearing on her withdrawal motion. Tolbert appeared at the hearing by videoconference. The prosecutor submitted on the papers. Robinson argued that Tolbert had pleaded no contest on March 13, 2020, because Ogas had told her "she couldn't have a bail motion and this was her only avenue to get out, which she felt . . . was her only way to effectively protect her health." Robinson could not understand "why [Ogas] would not have done a bail motion because if the judge, which would have been your Honor, had reduced her bail, she would not have pled. And it's as simple as that."

Robinson also argued that, contrary to Ogas's contention, two changes in circumstances *had* occurred by March 13, 2020, that made it more viable to move for a reduction in Tolbert's bail on that date. First, the COVID-19 pandemic had begun. Robinson could not understand why Ogas did not ask Tolbert whether she had any medical conditions that put her at greater risk of illness from COVID, which Robinson claimed was the "standard of practice" during the pandemic, or why Ogas did not argue for Tolbert's bail reduction or release given that the courts "were clearly about to shut down" and "[j]ury trials were clearly going to be suspended," something she and other counsel had done since the beginning of the pandemic. Second, Tolbert's neighbor had moved away by March 13, 2020, so there was "no threat of harm" if Tolbert returned home. Robinson then called Tolbert to testify.

Tolbert testified that on March 13, 2020, she was only able to talk with Ogas one minute at a time in an "inmate box" on the side of the courtroom.

9

Ogas said "he can't get a bail motion, and I said, 'What?  What is going on?'
And it kind of got loud because they told me to be quiet.  So they had kind of
stressed shut [*sic*] the conversation down."  Ogas said, "there is no hearing,
the courts are shutting down.  You know, he said, you're probably not going
to have your trial."  Tolbert, upset, questioned Ogas about what had
happened.  They were again told to be quiet, apparently by a bailiff.[3]  Ogas
said she "absolutely" could not have a bail motion hearing.  Also, he "did not
explain what I was taking, the severity of the deal with a felony, anything."
She understood she would be released from jail if she agreed to the deal and
would not have agreed to it otherwise.  Also, her neighbor had sold her house
in December 2019, and Tolbert had not seen her since.

At the completion of Tolbert's testimony, the court asked if the matter
was submitted.  After counsel indicated it was, the court denied Tolbert's
motion without explanation.

## IV.

### *Tolbert's Sentencing and Notice of Appeal*

At the sentencing hearing, the court, consistent with the parties' plea
agreement, placed Tolbert on three years' probation with the understanding
that she could move to reduce the felony strike to a misdemeanor if she
successfully completed her first year of probation.  Tolbert filed a timely
notice of appeal challenging the validity of her plea with a certificate of
probable cause executed by the trial court.

---

[3] The reporter's transcript states, "And the bail told us to be quiet . . . ."

## DISCUSSION

## I.

## *Tolbert Fails to Show the Trial Court Abused Its Discretion.*

Tolbert has not shown that the trial court abused its discretion by denying her motion to withdraw her no contest plea. Assuming for the sake of argument that the extraordinary stress Tolbert experienced on March 13, 2020, when she pleaded no contest, constituted duress, she has not shown that she met her burden below to establish by clear and convincing evidence that she pleaded no contest because of the duress rather than freely and voluntarily.

### A. Legal Standards

Tolbert moved to withdraw her plea under section 1018, which provides, "On application of the defendant at any time before judgment . . . , the court may, and in case of a defendant who appeared without counsel at the time of the plea the court shall, for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted."

To establish good cause to withdraw a guilty plea, the defendant must show by clear and convincing evidence (1) that "he or she was operating under . . . any . . . factor overcoming the exercise of his or her free judgment, including . . . duress," and (2) "prejudice in that he or she would not have accepted the plea bargain had it not been for" that factor. (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416, citing *People v. Huricks* (1995) 32 Cal.App.4th 1201, 1207-1208 and *In re Moser* (1993) 6 Cal.4th 342, 352; see also *People v. Shaver* (1966) 239 Cal.App.2d 213, 219 [for a motion to change a plea purportedly made because of coercion to succeed, "[c]oercion must be established by clear and convincing evidence"].)

11

" 'The phrase "clear and convincing evidence" has been defined as "clear, explicit, and unequivocal," "so clear as to leave no substantial doubt," and "sufficiently strong to demand the unhesitating assent of every reasonable mind." ' " (*People v. Caruso* (1968) 68 Cal.2d 183, 190.)  It "demands a degree of certainty greater than that involved with the preponderance standard, but less than what is required by the standard of proof beyond a reasonable doubt." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 998.)  In other words, it requires a finding of " 'high probability.' " (*Ibid*.)

" '[T]he withdrawal of a plea of guilty should not be denied in any case where it is in the least evident that the ends of justice would be subserved by permitting the defendant to plead not guilty instead; and it has been held that the least . . . influence causing a defendant to plead guilty when he has any defense at all should be sufficient cause to permit a change of plea from guilty to not guilty." (*People v. Huricks*, *supra*, 32 Cal.App.4th at p. 1210.) Nonetheless, " '[a] plea may not be withdrawn simply because the defendant has changed his [or her] mind.' " (*People v. Breslin*, *supra*, 205 Cal.App.4th at pp. 1415-1416.)

We review a trial court's denial of a motion to withdraw a plea for abuse of discretion.  (*People v. Breslin*, *supra*, 205 Cal.App.4th at p. 1416.)[4] We will not disturb a ruling "unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Guerra* (2007) 37 Cal.4th 1067, 1113.)  Under an abuse of discretion standard of review, " 'we ask whether the trial court's findings of fact are supported by substantial evidence,

_____

[4]  In one part of her briefs, Tolbert argues that the conditions of her confinement were "unconstitutionally" coercive.  Regardless, she agrees that we review the trial court's denial of her withdrawal motion for abuse of discretion.

12

whether its rulings of law are correct and whether its application of law to the facts was neither arbitrary nor capricious.' " (*People v. Clancy* (2013) 56 Cal.4th 562, 578.)  In determining whether the trial court has abused its discretion, we "view the evidence in the light most favorable to the trial court's ruling." (*People v. Edwards* (2013) 57 Cal.4th 658, 711.)

The trial court did not state its reasons for denying Tolbert's motion to withdraw her plea (and Tolbert does not argue the court was required to state them).  When the record is silent regarding a court's reasons for a decision, we presume the decision is correct and imply all findings necessary to support it.  (*Corenevsky v. Superior Court* (1984) 36 Cal.3d 307, 321; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

### B.  Analysis

Tolbert pleaded no contest on March 13, 2020, under extraordinarily stressful circumstances.  As recounted by our colleagues in Division Four of this court in *Stanley v. Superior Court* (2020) 50 Cal.App.5th 164, "[on] March 4, 2020, Governor Gavin Newsom declared a state of emergency in response to the global outbreak of COVID-19, a 'new disease, caused by a novel (or new) coronavirus that has not previously been seen in humans.' " (*Id.* at p. 167.)  And as discussed in Tolbert's motion papers below, on March 12, 2020, the day before Tolbert's hearing, the Governor issued an unprecedented order restricting in-person gatherings due to the COVID-19 outbreak, creating an uncertainty about the immediate future of court proceedings as reflected in Ogas's counsel to her the next day.  For anyone in custody at the time, the possibility of contracting the virus was undeniably of grave concern, given the reports at the time of its potentially adverse effect on the health of anyone exposed to it.  For example, the week before Tolbert's March 13, 2020 hearing, The Sacramento Bee reported the fear of public

13

officials that COVID-19 would " 'spread like wildfire' " through California jails and prisons. (Pohl, *California jails, prisons on alert for coronavirus. Fear it will 'spread like wildfire,*' Sac. Bee (Mar. 6, 2020 <https://www.sacbee.com/news/california/article240962761.html> [as of Mar. 29, 2022]; see also *Stanley,* at pp. 169-170 [discussing the severity of the COVID-19 crisis in the first half of 2020].)

The parties do not cite, and we have not found, any case that addresses whether the extraordinarily stressful circumstances people, in custody or otherwise, faced as a result of the COVID-19 outbreak constitute the duress required under the law to prevail in a motion to withdraw a plea. The cases tend to address improper duress or coercion resulting from the improper actions of a person. (Cf. *People v. Weaver* (2004) 118 Cal.App.4th 131, 149-150 [reversing denial of motion to withdraw plea because of trial court's coercive comments about defendant's prospects at trial and attitude towards defendant]; see also *People v. Huricks*, *supra*, 32 Cal.App.4th at p. 1208 [rejecting defendant's duress claim because "[n]othing in the record indicates he was under any more or less pressure than every other defendant faced with serious felony charges and the offer of a plea bargain"].) The parties do not cite any cases, and we have not found any, that provide guidance on this question. We need not resolve it, however, because, assuming for the sake of argument that these circumstances do constitute the requisite duress, Tolbert does not show that she proved by clear and convincing evidence below the second element of her claim: that she pleaded no contest *because* of the duress.

More specifically, the trial court, based on the record before it, could have reasonably concluded that there were significant gaps in Tolbert's supporting evidence so as to call into question the credibility of her

14

contention that she pleaded no contest because of the duress rather than freely and voluntarily. Further, there is substantial evidence to support the trial court's rejection of Tolbert's contention. These gaps and substantial evidence include the following:

(1) On March 13, 2020, Tolbert stated that she was freely and voluntarily pleading no contest, and Ogas opined that she was freely and voluntarily entering this plea as well.

(2) Conversely, nothing in the record indicates that on March 13, 2020, Tolbert raised with Ogas, the court or anyone else *any* concerns about the adverse impact on her health of the COVID-19 virus or the uncertainty about her trial date.

(3) In her withdrawal motion, Tolbert based her claim that she pleaded under duress squarely on her contention that as of March 13, 2020, she suffered from two immune-compromising physical conditions, Sjögren's syndrome and T-cell lymphoma, that made her particularly vulnerable to the COVID-19 virus. But she did not corroborate her assertion that this was the case with any admissible evidence. Instead, she attached to her brief a portion of a document without establishing in her declaration or otherwise its authenticity, the predicates for any exception to the hearsay rule or the meaning of the document's content. The court was not required to credit Tolbert's assertions about her physical conditions. Nor was it required to consider the inadmissible document attached to her brief.

(4) The record contains evidence from which the court could have reasonably inferred that Tolbert chose to enter the plea agreement on March 13, 2020, because it was favorable. Her chances of succeeding at trial were questionable in the face of the compelling, clear and detailed preliminary hearing testimony of her neighbor. Further, she gained

15

significant advantages by agreeing to the negotiated disposition of her case that would not be available if she were convicted at trial. These included the assurance that she would be permitted three years of probation rather than face the possibility of a sentence of up to five years for the making a criminal threat offense and the accompanying enhancement allegation (see §§ 422, 18 [up to three years sentence for a criminal threat conviction]; § 12022.1, subd. (b) [two years penalty enhancement]),[5] the opportunity to reduce her felony strike conviction to a misdemeanor if she successfully completed her first year of probation and, according to Tolbert's brief in support of her withdrawal motion, the dismissal of the other pending criminal case against her.

(5) Ogas did *not* indicate in his declaration in support of her withdrawal motion that Tolbert told him on March 13, 2020, that she wanted to proceed with a bail reduction motion or that she was anything less than desirous of a negotiated disposition of her case. Instead, Ogas merely stated that *before* that date "it did not appear that Ms. Tolbert was inclined to take any plea deal." This vague statement falls far short of demonstrating that Tolbert did not enter into the negotiated disposition of her case on March 13, because of the advantages it secured her.

(6) The record indicates that Tolbert consistently sought to be released from custody starting well before the COVID-19 outbreak, suggesting her desire to be released from custody was not necessarily tied to the pandemic.

---

[5] Tolbert argues that she was surely a candidate for probation if she lost at trial in light of her limited criminal record and her view of the incident. We do not necessarily agree with this assertion. But even if it were true, it would not eliminate the possibility that she chose to enter the plea agreement because of the uncertain outcome of her trial.

Tolbert ignores the weaknesses in her own evidence and the substantial evidence supporting the trial court's implied finding that she freely and voluntarily entered her plea. Her appellate brief vigorously reasserts the factual contentions she made below, which she describes as "uncontroverted." In effect, she is asking this court to reweigh the evidence, to credit her testimony when the trial court did not. In doing so she fails to understand the basic principles of appellate review.

"In reviewing factual determinations for substantial evidence, a reviewing court should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' [Citation.] The determinations should 'be upheld if . . . supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence.' [Citations.] Uncontradicted testimony rejected by the trial court ' "cannot be credited on appeal unless, in view of the whole record, it is clear, positive, and of such a nature that it cannot rationally be disbelieved." ' " (*In re Caden C.* (2021) 11 Cal.5th 614, 640.)

Our role in reviewing a decision for abuse of discretion is differently focused but similarly constrained. We focus "not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when ' " 'the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' [Citation.] But ' " '[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " ' [Citation.] [S]ee also [*In re*] *Robert L.* [1993] 21 Cal.App.4th [1057,] 1067 ['The reviewing court should interfere only " 'if . . . under all the evidence, viewed most favorably in support of the trial

17

court's action, no judge could reasonably have made the order that he [or she] did' " '].)" (*In re Caden C., supra*, 11 Cal.5th at p. 641.)

From the trial court's denial of Tolbert's withdrawal motion, we infer that the court did not find credible her contentions that she pleaded no contest because of duress relating to COVID and her health risks. Given the opportunity the trial court had to observe her demeanor when she entered the plea and when she testified at her withdrawal motion hearing, we must defer to its credibility determinations. It was entitled to find her assertions not credible even if they were not controverted. Our Supreme Court has instructed, "the [trial] court is better positioned than are we to observe a witness's demeanor and discern his or her credibility. Testimony can be uncontroverted and yet be presented in a fashion that is unpersuasive for reasons not evident on a written record." (*City of Manhattan Beach v. Superior Court* (1996) 13 Cal.4th 232, 262; see also *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 78 [trial court best positioned to observe a witness's demeanor and evaluate his or her credibility].) Consistent with this view, the court has cautioned that "[u]ncontradicted testimony rejected by the trial court ' "cannot be credited on appeal unless, in view of the whole record, it is clear, positive, and of such a nature that it cannot rationally be disbelieved." ' " (*In re Caden C., supra*, 11 Cal.5th at p. 640; accord, *People v. Shaver, supra*, 239 Cal.App.2d at p. 219 [in affirming a denial of a motion to change a plea, holding that "[t]he judge was not obliged to believe appellant's explanation" that he was coerced into entering his plea, particularly when he made no mention of the coercion at the time]; *Hinrichs v. Melton* (2017) 11 Cal.App.5th 516, 525 [appellant "confuses uncontroverted evidence with credible evidence. The trier of fact is not required to believe uncontradicted testimony"]; *People v. Martinez* (2013) 57 Cal.4th 555, 565 ["It is up to the

18

trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other corroborating circumstances"].)

Here, for the reasons we have discussed, Tolbert's declaration and testimony *could* rationally be disbelieved by the trial court. And while not directly controverted, Tolbert's statements about her motivation for accepting the plea were indirectly controverted by the evidence that she did not mention her physical conditions or fears about contracting COVID-19 to her counsel or the trial court, the absence of corroboration of the claimed physical conditions with admissible evidence (such as a physician's declaration and/or an authenticated medical record), and the evidence of the plea agreement itself, which reflected other motivations that may have driven her decision to accept the plea. (See *People v. Shaver*, *supra*, 239 Cal.App.2d at p. 219 [trial court could have found lack of good cause to withdraw the plea where, before pleading guilty, appellant said nothing to the court about his alleged fear and there was no evidence that he told his counsel of that motivation].)

We have no reason to, and will not, conclude that the trial court erred in concluding that Tolbert failed to meet her evidentiary burden. On this record, we cannot say that the trial court abused its discretion in concluding Tolbert failed to show by clear and convincing evidence that she pleaded no contest because of duress.

## II.

### *Tolbert Fails to Show She Received Ineffective Assistance of Counsel.*

Tolbert also argues that Ogas's failure on March 13, 2020, to move for bail reduction under the extraordinary circumstances of the pandemic contributed to the coercive context of her plea and constituted ineffective assistance of counsel. She raises this as a separate claim in her opening

19

brief, but states in her reply brief, "Ultimately, the ineffective assistance of counsel claim here is not so much a stand-alone claim, as an additional reason to find the court should have permitted Ms. Tolbert to withdraw her plea." Whether she raises ineffective assistance of counsel as a stand-alone claim or as an additional reason to find the trial court erred in denying her motion, Tolbert has failed to establish the merits of the claim.

" ' "In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' [Citations.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " ' " (*People v. Lucas* (1995) 12 Cal.4th 415, 436.) "[T]he question is not what the 'best lawyers would have done,' nor 'even what most good lawyers would have done,' but simply whether 'some reasonable lawyer' could have acted, in the circumstances, as defense counsel acted in the case at bar. [Citation.] A defendant must show that his attorney's performance fell below this objective standard of reasonableness by a preponderance of the evidence." (*People v. Jones* (2010) 186 Cal.App.4th 216, 235, citing *People v. Mincey* (1992) 2 Cal.4th 408, 449.)

"When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective

20

assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Tolbert argues that on March 13, 2020, she had a good chance of obtaining her release from jail via a bail motion because of shifts in the law beginning to take place on the general issue of bail and the new and extraordinary circumstances of the COVID-19 pandemic. She contends that Ogas's performance fell below professional standards based on the opinion of her attorney, Robinson, an experienced criminal defense attorney. In her declaration and before the court, Robinson opined that it was standard practice during the pandemic for attorneys to advocate for their clients' release and to ask their clients if the pandemic posed special risks to them. Tolbert contends that Ogas did neither.

The People disagree. They contend that Ogas acted reasonably under the circumstances by seeking a plea agreement favorable to Tolbert's interests that also won her immediate release from custody. They emphasize that regardless of the circumstances cited by Tolbert, her chances of winning a motion to reduce her bail were far from certain because she was charged with a crime that qualified as a "serious felony" under section 1192.7 and represented a danger to public safety. In support of this position, the People note that, as a "serious felony," Tolbert's charged offense was subsequently excluded from Alameda County's pandemic-related emergency bail schedule, issued on April 6, 2020.

21

We agree with the People. Tolbert ignores that Ogas *did* seek her release from jail on March 13, 2020—by negotiating a plea agreement for her. As we have discussed, on this record, the trial court reasonably could have concluded that Tolbert freely and voluntarily wanted to pursue this negotiated disposition because of *all* the advantages it secured her, including the favorable outcome as well as her immediate release, and that she would have done so regardless of her prospects of winning a bail reduction motion. Thus, the court could have concluded that Ogas acted reasonably on March 13, 2020, and consistent with Tolbert's wishes at that time.

Further, Tolbert has not shown that it would have been unreasonable for Ogas to conclude on March 13, 2020, that Tolbert's chances of winning a bail reduction motion were not strong enough to pursue. Tolbert had been accused of committing a serious felony. She allegedly threatened to kill her neighbor while out of custody on her own recognizance pending resolution of a separate charge of illegally possessing a firearm in another case. These were serious charges that could have led a trial judge to find that Tolbert's release would pose a danger to the safety of others. Under the governing law, "[i]n setting, reducing, or denying bail, a judge or magistrate shall take into consideration the protection of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at trial or at a hearing of the case. *The public safety shall be the primary consideration*." (§ 1275, subd. (a)(1), italics added.) Further, our Supreme Court has recognized that victim and public safety are " 'primary considerations,' " and that "the court must assume the truth of the criminal charges" in making its bail determinations. (*In re Humphrey* (2021) 11 Cal.5th 135, 152, 153.) Ogas reasonably could have thought that the trial

22

court would find Tolbert posed a risk to the safety of others and thus deny a motion to reduce Tolbert's bail, notwithstanding the pandemic outbreak.

Tolbert also argues that our issuance in 2018 of *In re Humphrey* (2018) 19 Cal.App.5th 1006 (which our Supreme Court affirmed in 2021 in *In re Humphrey, supra*, 11 Cal.5th 135), in which we held that courts were required to consider a defendant's ability to afford bail when setting a bail amount, also improved her chances of obtaining a bail reduction on March 13, 2020. However, that case was then under review by our Supreme Court and, therefore, could only be relied on as potentially persuasive authority at the time. (*People v. Humphrey* (2018) 233 Cal.Rptr.3d 129; Cal. Rules of Court, rule 8.1115(e)(1).) And in any event, Tolbert does not cite to anything in the record that affirmatively shows the court did not consider her ability to pay bail in the course of its determinations.

Also, the trial court was not required to accept the opinion of Tolbert's attorney, Robinson, about attorney standards of practice during the pandemic. Generally, "[t]he value of an expert's testimony depends on the material upon which the opinion is based and the reasoning used to form that opinion [citations], and a trial court is not obligated to accept even unanimous or uncontradicted expert opinion. [Citations.] The trial court may reject completely the testimony of an expert witness, as long as its decision to do so is not arbitrary." (*People v. McCoy* (1995) 40 Cal.App.4th 778, 785); *In re Scott* (2003) 29 Cal.4th 783, 823 [a "fact finder may reject even 'a unanimity of expert opinion' "].) "Although experts may testify about their opinions, the fact finder decides what weight to give those opinions. This is especially important when the witnesses are not neutral court-appointed experts but experts hired by a party specifically seeking evidence

23

supporting that party's position." (*In re Scott*, at p. 823.) We see no reason to conclude the court acted arbitrarily in rejecting Robinson's opinion.

For these reasons, Tolbert has failed to show that Ogas had no rational tactical purpose for his actions. Therefore, she has failed to show she received ineffective assistance of counsel, whether as a stand-alone claim or as a reason for finding error in the trial court's denial of her motion to withdraw the plea. In light of our conclusion, we need not address the parties' debate regarding whether any deficient performance by Ogas was prejudicial to Tolbert.

## DISPOSITION

The judgment is affirmed.

_____

STEWART, J.

We concur.

_____

RICHMAN, Acting P.J.

_____

MILLER, J.

*People v. Tolbert* (A161878)

25