**STATE of Tennessee, Appellee,**

v.

**Ralph William BLUNT, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Permission to Appeal Denied by Supreme Court March 3, 1986.

Nov. 12, 1985.

Kennetha Sayers, Asst. Public Defender, William L. Shulman, Senior Asst. Public Defender, Nashville, for appellant.

W.J. Michael Cody, Atty. Gen., Kevin Steiling, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., John C. Zimmermann, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

JOE D. DUNCAN, Judge.

The defendant, Ralph William Blunt, was convicted of felony-murder and received a sentence of imprisonment for life. He was also convicted of grand larceny and received a Range II sentence of ten (10) years as an especially aggravated offender.

In this appeal, the defendant says the trial court erred in denying his motion to quash the petit jury venire, raises an issue concerning the method used to impanel the jury that tried his case, and complains that evidence was improperly allowed regarding

his probationary status. We find no reversible error.

We note that the defendant does not question the sufficiency of the evidence, and thus it is not necessary for us to summarize the evidence. Suffice it to say, the evidence fully authorized the jury to find the defendant guilty beyond a reasonable doubt of both felony-murder and grand larceny.

First, the defendant contends that the trial court erred in denying his motion to quash the petit jury venire based upon the claim of deprivation of a representative cross-section of the community as guaranteed by the Federal and State Constitutions. Specifically, as claimed in his motion for a new trial and as argued in his brief, he says that the exemptions which are granted to citizens who are over 65 years of age result in a significant underrepresentation of an identifiable segment of society. *See* T.C.A. § 22–1–103(a)(5).

At various pretrial hearings, as well as at the motion for new trial hearing, considerable testimony was adduced regarding the process and procedures used in selecting Davidson County jury venires.

Several witnesses explained that the names of potential jurors were selected from voter registration lists, and they described the methods used in placing those names in the jury box, the procedures used in drawing the cards containing those names from the box, and the practices followed in excusing jurors. After reviewing all of the testimony, we conclude that the procedures used in selecting jurors for the jury pools in Davidson County are proper.

We conclude from the evidence that the procedures followed do not systematically exclude from jury service any identifiable segment of society; rather, the procedures used serve to insure that a representative cross-section of the community is summoned and available for jury service.

■ Neither the jury roll nor the venire panel need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group in the community. *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *State v. Jefferson,* 529 S.W.2d 674 (Tenn.1975).

■ Regarding the defendant's specific complaint that the exemption of jurors over 65 years of age results in a significant underrepresentation of an identifiable segment of society, we find that the evidence does not show that to be the case.

While T.C.A. § 22–1–103 allows an exemption for persons "over sixty-five (65) years of age, disabled by bodily infirmity, or specially exempted by any other positive law," such exemption is personal to the individual, to be claimed or waived by such person alone. The evidence showed that citizens in this age group were regularly summoned for jury duty by the jury commissioners. While in a few instances, some citizens in this age group were excused permanently when they exercised their exemption, this fact cannot rise to the level of documenting a claim of systematic exclusion of the group that makes up this segment of the community.

■ A showing of systematic exclusion of a group is necessary to demonstrate a constitutional infirmity in a jury. *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *Lillard v. State,* 528 S.W.2d 207 (Tenn.Cr.App.1975). The burden is on the defendant to prove purposeful discrimination. It will not be presumed. *Swain v. Alabama, supra.*

In the trial court's ruling on the defendant's motion, the court correctly found that the defendant had not made out a *prima facie* case showing a systematic exclusion of persons over 65 years of age from the jury venires.

■ In order to establish a *prima facie* violation of the fair cross-section requirement, the defendant must show (1) the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3)

that this underrepresentation is due to the systematic exclusion of the group in the jury selection process. *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979); *State v. Nelson*, 603 S.W.2d 158, 161 (Tenn.Cr.App.1980).

■ In denying the defendant's motion to dismiss, the trial court noted that, of the forty-seven (47) people who were members of the jury panel from which the jury in the instant case was selected, the defendant was only able to identify thirty-five (35) of the prospective jurors. Of these thirty-five (35), two (2) were 65 years or over and fifteen (15) were between the ages of 55 and 65. Of the latter fifteen (15) members, seven (7) were between the ages of 60 and 65. Consequently, the trial court concluded:

> Given the large number of persons in the prospective jury panel over the age of 55, and the failure of the defendant to identify over a quarter of the jury panel, this Court can find no violation of the cross-sectional requirement of the Sixth Amendment or of the Tennessee Constitution. Having previously found the statistical evidence presented prior to trial to be less than reliable, the Court cannot and will not grant a new trial on the statistical information available to it. The defendant has not raised a *prima facie* case.

We agree with the trial court's ruling. Initially, the failure of the defendant to identify, as to age classification, over one-fourth of the jury panel, documents the finding that a *prima facie* case was not established. Moreover, we are not prepared to say that the age of 65 should mark the boundary for a cognizable element of society. As the trial court aptly commented in its ruling, "why would a juror sixty-three (63) years of age not represent the same interests, as say, a juror sixty-six (66) years old."

In conclusion, we find that the defendant has failed to carry his burden to show that the petit jury venire in the instant case did not fairly represent a cross-section of the community. Also, we find that the evidence fails to show any systematic exclusion of any distinctive group of citizens. To the contrary, the evidence affirmatively shows that the jury selection procedures used were not discriminatory.

■ Next, the defendant says the trial court erred in allowing the State to cross-examine him about his probationary status.

The trial court ruled that the State would not be allowed to cross-examine the defendant as to a prior conviction for aggravated assault, but allowed the State to question him about his probationary status because it provided a possible motive to be untruthful on the stand. The State's exploration of this issue consisted of one question:

Q. Mr. Blunt, are you on probation right now?

A. Yes, I am.

We agree with the defendant that this was error because it indicated to the jury that the defendant had been convicted of some prior crime. We are not persuaded by the State's argument that the question and answer were probative on the assumption that the defendant would lie to absolve himself of the instant crimes so as not to create a probationary violation. In view of the serious nature of the crimes for which he was on trial, it is unlikely that the defendant would have been motivated to lie solely because he was worried about the likelihood that his probationary status would be affected.

■ Nevertheless, we do not see that this isolated reference to his probationary status would rise to the level of being reversible error. The name or nature of the crime for which he was on probation was not divulged to the jury. Nothing in the reference conveyed any indication to the jury that his prior crime bore any similarity to the crimes on trial. We point out that in considering the admissibility of a prior crime, a predominant concern in balancing probative value against prejudicial effect is the degree of similarity between a prior crime and the crime on trial. *See State v. Sheffield*, 676 S.W.2d 542 (Tenn. 1984). Thus, as we have indicated, any

possible prejudice in this regard was eliminated because the jury was not informed of the offense for which the defendant had been previously convicted. Also, evidence of the defendant's probationary status would not indicate to the jury that the defendant had a propensity to commit a certain type of crime.

We are satisfied that the defendant was convicted on the strength of the overwhelming evidence, and that the jury's verdict was not affected by this isolated reference to his probationary status. We find the error to be harmless beyond a reasonable doubt. T.R.A.P. 36(b); Tenn.R. Crim.P. 52(a).

 Finally, the defendant says the trial court erred in impaneling the jury that tried the case. He specifically complains of the procedure used in selecting the alternate jurors to try the case.

The trial court impaneled fourteen (14) jurors without designating which two (2) jurors would serve as alternates. At the close of all the evidence, the names of two (2) of the jurors were selected at random as the alternates and were subsequently excused.

When the defendant objected to this procedure, the trial court explained that the alternates would be designated after the close of the evidence to avoid the "spare tire syndrome." It was the trial court's view that alternate jurors have a tendency to be less attentive than the other jurors because they do not expect to be called upon to decide the case.

We can see considerable merit to the trial court's reasoning. Indeed, the trial court's procedure might be the better practice. Nevertheless, we interpret the language of Tenn.R.Crim.P. 24(e) to contemplate that alternate jurors will be identified and designated as such during the jury selection process.

At any rate, the process used in selecting the alternate jurors did not result in prejudice to the defendant. We are not influenced by the defendant's argument that he was prejudiced by not being able to

target "one or two members of the jury as those he could most readily convince of reasonable doubt," because he did not know the members of the jury who would ultimately decide the case. As the defendant acknowledges, however, this risk is always present due to the possibility of a regular juror becoming ill or otherwise becoming unable to continue as a juror. We point out that these are the reasons why alternate jurors are chosen in the first instance.

The record shows that the defendant was tried and convicted by a fair and impartial jury. The two (2) errors we have mentioned in connection with these last two (2) issues were not of a prejudicial nature, and these errors, neither singly nor combined, would require reversal of the defendant's convictions.

The judgments of the trial court are affirmed.

O'BRIEN, J., and SAM E. BOAZ, Special Judge, concur.