[No. A064022. First Dist., Div. One. Nov. 30, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT EARL McCOY, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and III.

## COUNSEL

David McNeil Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ann K. Jensen and Allan Yannow, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STRANKMAN, P. J.**—Appellant Robert Earl McCoy was charged by information with murder, with a prior second degree murder special circumstance, personal knife use and great bodily injury enhancements, and two prior serious felonies. (Pen. Code, §§ 187, 190.2, subd. (a)(2), 12022, subd. (b), 1203.075.)[1] Appellant pled not guilty and not guilty by reason of insanity. Trial was by jury, which convicted him of second degree murder and found the enhancement allegations true. The trial court found the prior murder allegation true. In the sanity phase, the jury found appellant sane when he committed the murder. In the penalty phase, the jury found appellant should be sentenced to life without possibility of parole.

Appellant moved for a new trial on the ground the systematic exclusion of persons aged 70 and older from the jury pool violated his constitutional right to a jury drawn from a representative cross-section of society. In the published portion of this opinion, we conclude the motion was properly denied, because appellant did not show that the group allegedly excluded was a distinctive or cognizable group within the meaning of the representative cross-section rule.

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

## I. FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II. CHALLENGE TO THE COMPOSITION OF THE JURY VENIRE

*Background*

Before trial, appellant moved for a continuance to "investigate the composition of the venire panel" so as to file a challenge. More specifically, he expressed concern about the low number of Blacks and East Palo Alto residents on the panel. The court denied the continuance. However, after the penalty phase of the trial, the matter was continued to enable appellant to investigate the process used to summon jurors in San Mateo County (the County). Later, appellant joined with two defendants in unrelated cases in a motion to quash the County jury venire; he also moved for a new trial. Shortly before the evidentiary hearing on the motions, appellant filed supplemental points and authorities, arguing for the first time that prospective jurors were being excluded improperly based on age. Our summary of the evidence at that hearing concerns only the evidence relating to that claim.

The County's manager of jury services, Tim Benton, explained the procedure for summoning, qualifying, and excluding prospective jurors. Under the system in effect when appellant was tried, approximately 8,000 persons per month were summoned to provide the necessary monthly venire of at least 2,500 qualified jurors. Summoned jurors were required to return an affidavit providing information on whether they met minimum statutory qualifications for jury service. A summoned juror returning an affidavit also might request deferral of jury service or seek to be excused based on several grounds, including health, extreme financial burden, lack of transportation, care of a dependent, or jury service within the past 12 months. The staff of the jury commissioner's office (the Office) evaluated requests for excusal based on the information in the affidavit. In addition to the excusal categories listed on the affidavit itself, the Office had a category labeled "3F," created for unusual situations that did not fit into any other category.

The official policy of the office was to treat affidavits from prospective jurors over the age of 70 the same as those from younger persons, except that those 70 and older did not need a physician's letter to document a medical excuse. However, Benton had recently discovered that over the previous two years, apparently a routine practice had developed among certain staff members to be more lenient with individuals seventy and older. Most

---

*See footnote, *ante*, at page 778.

persons in that age group who requested excusal were excused, regardless of the nature of their excuse. Others in that age group were excused even without a request.

Demographer Dr. Paula Hudis surveyed prospective jurors who reported for jury duty during a six-week period in May and June 1993. Of the survey sample, approximately 1.13 percent were aged 70 or older. According to the 1990 census, 10.42 percent of the general population of the County were in that age group. During the 18-month period immediately preceding the hearing, approximately 90 percent of those excused in the "3F" category were 70 and older.

Social psychologist and social science researcher Dr. Carol Huffine testified as an expert in longitudinal research. She was of the opinion that people born during a particular period of time (age cohorts) share unique and distinct attitudes, perspectives, and beliefs because they have experienced historical events or social change at the same stage of their lives. To illustrate, she described a study that attempted to determine the long-term effects on different age cohorts of having experienced economic deprivation between 1929 and 1933. Personality tests administered to adolescent boys born in 1928 and 1929 indicated that as a group, they displayed feelings of "incompetence, hopelessness, . . . a sense of victimization." The same tests administered to adolescent boys born in 1921 and 1922 indicated they felt competent, optimistic, and hopeful. Tested again at age 40, both groups were basically normal and healthy, but the older cohorts demonstrated "more robust" psychological health. In Dr. Huffine's opinion, because persons 70 and older experienced the depression, World War II, and the post-war economic boom at the same stage of their lives, they have similar attitudes and beliefs making them distinct from other groups, even those only a few years younger.

Psychologist Dr. Morton A. Lieberman testified as an expert in gerontology. He too was of the opinion that persons in a particular age group share a "common and distinct perspective," both because of the common personal and historical events they have experienced and because of the common attitudes and behaviors expressed by society toward particular groups. He distinguished between the "young old," who are 60 to 69, and the "old old," who are 70 and older. He was of the opinion that the latter group as a whole has more "acceptance, tolerance, and spirituality." They also have a "different kind of perspective and way of looking at information and processing it and judging it," described by some as "wisdom."

The trial court denied the motion. It concluded that the practice of excusing older jurors who had not requested excuses was unacceptable and

wrong. At the same time, it rejected the argument that persons 70 and older were a cognizable or distinct class.[2]

*Discussion*

■ Under the Sixth Amendment of the United States Constitution and article I, section 16 of the California Constitution, a defendant is entitled to a jury venire drawn from a representative cross-section of the community. (*Duren* v. *Missouri* (1979) 439 U.S. 357, 363-364 [58 L.Ed.2d 579, 586-587, 99 S.Ct. 664]; *People* v. *Wheeler* (1978) 22 Cal.3d 258, 272 [148 Cal.Rptr. 890, 583 P.2d 748].) To establish a prima facie violation of the fair-cross-section requirement, defendant must first show that the group allegedly excluded is a " 'distinctive' " group in the community. (*Duren, supra*, at p. 364 [58 L.Ed.2d at pp. 586-587].)

The United States Supreme Court has yet to define precisely what constitutes a distinctive group for purposes of the representative cross-section rule. (See *Lockhart* v. *McCree* (1986) 476 U.S. 162, 174 [90 L.Ed.2d 137, 148, 106 S.Ct. 1758].) Nevertheless, it is settled as a matter of law that both Blacks and Hispanics are distinctive or cognizable groups (*People* v. *Stansbury* (1993) 4 Cal.4th 1017, 1061 [17 Cal.Rptr.2d 174, 846 P.2d 756], revd. on other grounds and remanded (1994) 511 U.S. __ [128 L.Ed.2d 293, 114 S.Ct. 1526] affd. 9 Cal.4th 824 [38 Cal.Rptr.2d 394, 889 P.2d 588]; *People* v. *Harris* (1984) 36 Cal.3d 36, 51 [201 Cal.Rptr. 782, 679 P.2d 433]), as are women (*Taylor* v. *Louisiana* (1975) 419 U.S. 522, 531 [42 L.Ed.2d 690, 698-699, 95 S.Ct. 692]; *Duren* v. *Missouri, supra*, 439 U.S. at p. 364 [58 L.Ed.2d at pp. 586-587]). In *Rubio* v. *Superior Court* (1979) 24 Cal.3d 93 [154 Cal.Rptr. 734, 593 P.2d 595], our Supreme Court expressed two requirements for qualification as a cognizable or distinctive group. First, members of the group must share a common perspective arising from their life experience in the group, i.e., a common social or psychological outlook or perspective on human events gained precisely because they are members of that group. Second, the party seeking to demonstrate a violation of the rule also must show that no other members of the community are capable of adequately representing the perspective of the excluded group.[3] (*Id.* at p. 98.)

California courts have not been receptive to the argument that age alone identifies a distinctive or cognizable group within the meaning of this rule. (See, e.g., *People* v. *Henderson* (1990) 225 Cal.App.3d 1129, 1148-1153

---

[2]The court also held that there was no prima facie showing of any systematic exclusion of Blacks. Appellant does not challenge that aspect of the court's ruling.

[3]This second requirement has been questioned in *People* v. *Harris, supra*, 36 Cal.3d at page 51, footnote 5, but not squarely disapproved.

[275 Cal.Rptr. 837] [cognizability described as question of fact; persons 18 to 29 not a cognizable class] disapproved on other grounds in *People* v. *Davis* (1994) 7 Cal.4th 797, 805-810 [30 Cal.Rptr.2d 50, 872 P.2d 591]; *People* v. *McGhee* (1987) 193 Cal.App.3d 1333, 1351-1352 [239 Cal.Rptr. 28] [as a matter of law, youth not cognizable for purposes of *Wheeler* motion]; *People* v. *Marbley* (1986) 181 Cal.App.3d 45, 47-48 [225 Cal.Rptr. 918] ["young people" not cognizable class]; *People* v. *Parras* (1984) 159 Cal.App.3d 875, 877 [205 Cal.Rptr. 766]; *People* v. *Estrada* (1979) 93 Cal.App.3d 76, 93 [155 Cal.Rptr. 731] [no evidence to support claim of difference in attitude between young adults and older adults]; see also *People* v. *Stansbury, supra*, 4 Cal.4th at p. 1061 [commenting that the Court of Appeal has frequently rejected the claim that the young are a distinctive group].)

■ The foregoing cases all involve the young, and no California court has considered whether the elderly constitute a distinctive group. Nevertheless, several other courts have rejected that argument. (*Silagy* v. *Peters* (7th Cir. 1990) 905 F.2d 986, 1009-1011; *Brewer* v. *Nix* (8th Cir. 1992) 963 F.2d 1111, 1112-1113; *State* v. *Blunt* (Tenn.Crim.App. 1985) 708 S.W.2d 415, 418 [708 SW2d 415]; *Fox* v. *State* (Okla.Crim.App. 1989) 779 P.2d 562, 566-567 [779 P.2d 562] [statute allowing jurors over 70 to opt out of jury service reasonable in light of increasing rate of infirmities incurred by elderly].)[4]

*Silagy* v. *Peters, supra*, 905 F.2d 986, involves a situation much like that in the present case. The official responsible for compiling the jury venire exempted from service persons 70 or older, even though there was no statutory authorization for the exemption. The court held that although the exemptions were unwarranted under state law, the group was not distinctive for purposes of the fair-cross-section requirement. The circuit already had disapproved of the view that age was a characteristic which could define such a group. Furthermore, exemption of these individuals did not jeopardize the defendant's right to an impartial jury. The court said, "We do not question the generalized perception that older Americans do bring a unique perspective to jury proceedings. Petitioner, however, has failed to demonstrate that this perspective will not be adequately represented by those aged sixty and over who were represented on the venire wheel. . . . [W]hile we recognize that the exclusion of this class of jurors implicated the concern of the sixth amendment that all persons continue to participate in the administration of justice, this unfortunate fact by itself cannot establish a fair-cross-section violation." Finally, the court held that the testimony of defendant's

---

[4]But see *Williams* v. *State* (Ala.Crim.App. 1976) 342 So.2d 1325, in which the court reversed a conviction because persons over 65 were systematically excluded from the jury roll, stating without discussion that defendant was entitled to a cross-section of the community.

expert did not establish that persons over 70 constituted a distinctive group for Sixth Amendment purposes. While the elderly have much to offer in terms of life experience and exposure, they cannot be classified as a distinctive group for that reason alone. (*Id.* at pp. 1010-1011.)

In *Brewer* v. *Nix, supra,* 963 F.2d. 1111, defendant challenged an Iowa statute exempting persons over 65 from jury duty. He presented affidavits from 2 experts opining generally that people over 65 manifest different ideas and attitudes than those in other age groups and that the majority of those over 65 are able to serve. The court held that defendant had not proved a Sixth Amendment violation. The court noted that historically many states have imposed maximum and minimum juror age qualifications and that most federal circuits have held that an excluded age category is not a distinctive group for purposes of the Sixth Amendment. The court also held that defendant's evidence did not prove that people over 65 are a "constitutionally distinctive" group. It said, "The age parameters of the group are too arbitrary, and its supposed distinctive characteristics are too general and ill-defined. . . ." (*Id* at p. 1113, fn. omitted.)

Appellant attempts to distinguish the foregoing cases by insisting that in this case, detailed and uncontradicted testimony was offered proving that persons 70 and over share a common perspective arising from their life experience in that group. ■ However, the value of an expert's testimony depends on the material upon which the opinion is based and the reasoning used to form that opinion (*People* v. *Samuel* (1981) 29 Cal.3d 489, 498 [174 Cal.Rptr. 684, 629 P.2d 485]; *In re Alcala* (1990) 222 Cal.App.3d 345, 373 [271 Cal.Rptr. 674]), and a trial court is not obligated to accept even unanimous or uncontradicted expert opinion. (*In re Marriage of Battenburg* (1994) 28 Cal.App.4th 1338, 1345 [33 Cal.Rptr.2d 871]; *Lubetzky* v. *Friedman* (1991) 228 Cal.App.3d 35, 40 [278 Cal.Rptr. 706].) The trial court may reject completely the testimony of an expert witness, as long as its decision to do so is not arbitrary. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 890 [92 Cal.Rptr. 162, 479 P.2d 362].)

■ Clearly the County should not have routinely excused persons 70 and over who did not request excuses. (See Code Civ. Proc., § 204 [eligible persons may be excused from jury service only for undue hardship upon themselves, as defined by Judicial Council]; see also Cal. Standards Jud. Admin., § 4.5, subd. (d) [defining undue hardship].) Nevertheless, the trial court in this case was not persuaded by appellant's expert testimony that these individuals constituted a distinctive or cognizable group, and appellant has not established that the court acted unreasonably or arbitrarily. Although Dr. Huffine was of the opinion that persons 70 and over share unique

attitudes and beliefs not common to other groups, even those only slightly younger, she did not specify what those shared attitudes might be, other than political conservatism. Dr. Lieberman was of the opinion that the "old old" have more "acceptance, tolerance, and spirituality" than the "young old" of 60 to 69. The trial court reasonably could have concluded that the age parameters of these groups were too arbitrary and the proposed shared characteristics too amorphous and ill-defined to satisfy the *Duren* standards.

Our conclusion that persons 70 and older do not constitute a cognizable group makes it unnecessary to consider the other prerequisite of a prima facie showing, i.e., that the representation of the distinctive group in venires is not fair and reasonable in relation to the number of such persons in the community and that the under representation is due to systematic exclusion of the group in the jury selection process. (*Duren* v. *Missouri, supra*, 439 U.S. at p. 364 [58 L.Ed.2d at pp. 586-587].)

III.   Motion to Strike the Prior-murder Special Circumstance*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

IV.   Disposition

The judgment is affirmed.

Stein, J., and Dossee, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 14, 1996.

*See footnote, *ante*, page 778.